DA 07-0441

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 437

STATE OF MONTANA,

> Plaintiff and Appellee,

v.

JAMES LEE NORMANDY,

> Defendant and Appellant.

APPEAL FROM:     District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2006-187
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> > Jim Wheelis, Chief Appellate Defender, Steven N. Eschenbacher,
Assistant Appellate Defender, Helena, Montana

> For Appellee:

> > Hon. Mike McGrath, Montana Attorney General, David Ole Olson,
Assistant Attorney General, Helena, Montana

> > George Corn, Ravalli County Attorney, William Fulbright, Deputy
County Attorney, Hamilton, Montana

> > > Submitted on Briefs:  October 16, 2008

> > > Decided:  December 23, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    James Lee Normandy (Normandy) was charged with partner or family member assault (PFMA), a felony, in the Twenty-First Judicial District Court, Ravalli County. A jury convicted Normandy of the charge. Normandy appeals. We affirm.

¶2    Normandy raises two issues on appeal which we restate as follows:

¶3    Issue 1: Was Normandy denied a fair trial because of surprise in the introduction of expert testimony by a witness not listed by the State as an expert?

¶4    Issue 2: Did the District Court err in refusing to dismiss a prospective juror for cause?

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    On October 6, 2006, Tina Normandy (Tina) called 911 from outside a local grocery store and reported she was assaulted earlier that night at her home by Normandy, her husband. Officers responded to the parking lot and spoke with Tina. Sergeant Zae Hudson (Hudson) interviewed Tina and testified at trial she was "scared to death." In their conversation Hudson ascertained that earlier in the evening Tina was home with the kids while her husband was at a bar with friends. When he arrived home, the two began to argue and Normandy threw a cup of Alka-Seltzer at her and pushed her to the ground. At this point, Tina ran from the house and hid, waiting for Normandy to leave. She returned to the house to check on the children a short time after Normandy left. Tina stated Normandy returned almost immediately and was angrier than before. He grabbed her by the throat and pushed her onto the couch, holding her down for about a minute.

¶6    In a separate interview conducted later, Tina told Pete Clarkson (Clarkson), an investigator with the Ravalli County Attorney's Office, that Normandy punched her hard enough while on the couch that she saw stars. She said that when Normandy released her, she fled the trailer and hid for awhile—fearing he was after her—before making her way to the store to call 911.

¶7    After speaking with Tina in the parking lot Hudson drove to the trailer, with Tina in the front seat. Hudson testified that Tina appeared fearful and did not want to make any contact with Normandy. Hudson believed that Tina crouched down so that Normandy could not see her in the car. After a brief conversation, Normandy was arrested and placed in the back of the patrol car.

¶8    In addition to the information she gave to Hudson on the night of the incident, Tina also told Clarkson and a volunteer victim's advocate a similar story of the incident. Tina also described the incident in a sworn statement attached to a petition requesting a temporary order of protection against Normandy.

¶9    On October 23, 2006, the State filed an Information charging Normandy with felony PFMA and trial was scheduled for April 9, 2007. About a week before trial, Tina contacted the County Attorney's Office and recanted all her previous statements. Trial was held as scheduled, the potential jurors proceeded through voir dire and opening statements were presented. When called to testify at trial Tina said all of the allegations she made against her husband were lies.

¶10    During trial, the State called Valerie Widmer (Widmer), the victim advocate for Ravalli County, to testify as an expert. Counsel for Normandy objected, claiming she

was not listed as an expert and should not be allowed to testify as one. The objection was overruled. Widmer testified that based on her experience and education, it is very common for battered women to recant.

¶11 Upon the conclusion of trial the jury found Normandy guilty of felony partner or family member assault. Normandy timely appeals.

## STANDARD OF REVIEW

¶12 We review a district court's ruling allowing testimony of a witness to determine whether the district court abused its discretion. *State v. Bailey* 2004 MT 87, ¶ 11, 320 Mont. 501, ¶ 11, 87 P.3d 1032, ¶ 11.

¶13 We review a trial court's denial of a challenge for cause to determine whether the trial court abused its discretion. *State v. Golie*, 2006 MT 91, ¶ 6, 332 Mont. 69, ¶ 6, 134 P.3d 95, ¶ 6.

## DISCUSSION

¶14 **Issue 1: Was Normandy denied a fair trial because of surprise in the introduction of expert testimony by a witness not listed by the State as an expert?**

¶15 Normandy complains that the District Court erred in admitting the testimony of the State's expert Valerie Widmer, whom he maintains was a devastating surprise witness. He contends the court should have precluded her from testifying because the State failed to list her as an expert witness or provide a report detailing her expected testimony. In the alternative, he asks that we declare unconstitutional the discrepancy between the obligations imposed upon the defendant for expert witness disclosure, found at § 46-15-323, MCA, and those imposed upon the prosecutor at § 46-15-322, MCA. He

4

asks for the latter relief based upon grounds of "fundamental unfairness," and seeks plain error review of the constitutional issue. In response, the State urges us to affirm, arguing that the constitutional issue was not raised below and should not be reviewed under plain error, and that in any event, it fully complied with the witnesses disclosure requirements imposed upon it under § 46-15-322(1), MCA.

¶16    Section 46-15-322, MCA, provides in part:

(1) Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control:
        (a) the names, addresses, and statements of all persons whom the prosecutor may call as witnesses in the case in chief;

.   .   .

        (c) all written reports or statements of experts who have personally examined the defendant or any evidence in the particular case. . . .

By contrast, § 46-15-323, MCA, requires the defendant to provide the prosecutor with the names and addresses of the experts it expects to call at trial, together with their reports and the results of their investigations.

¶17    On April 3, 2007, the prosecution filed a notice of submission of witness list. The list included Widmer's name. At trial it was established Widmer did not prepare a written report for her testimony. After a brief discussion of the requirements of § 46-15-322(1), MCA, the judge allowed the prosecution to continue the examination of Widmer. The judge stated he did not see any statutory requirement that the State identify a witness as an expert or non-expert. The court noted her name had been made available

5

to the defense, and that since no report was prepared, the statute had not been violated. Therefore, her testimony was admissible under the statute.

¶18 We acknowledge there is a discrepancy between the statutory obligations imposed on the respective parties. While the defense is required to designate which of its proposed witnesses are experts (§ 46-15-323(6)(b), MCA) the State is under no similar duty, being required only to disclose the names of "all persons" it may call as witnesses. *See* § 46-15-322(1)(a), MCA. However, the defendant raised no constitutional challenge in the District Court to this inconsistency. It is axiomatic that we will not review an argument, much less a constitutional challenge, that is raised for the first time on appeal. *See Ford v. State*, 2005 MT 151, ¶ 12, 327 Mont. 378, ¶ 12, 114 P.3d 244, ¶ 12.

¶19 We further note that this Court avoids constitutional issues whenever possible. *Suburst School Dist. No. 2 v. Texaco*, 2007 MT 183, ¶ 62, 338 Mont. 259, ¶ 62, 165 P.3d 1079, ¶ 62 (*citing Trust v. Yellowstone County,* 2002 MT 201, ¶ 24, 311 Mont. 194, ¶ 24, 53 P.3d 1268, ¶ 24). "Certain constraints govern the Court's power to determine the constitutionality of statutes. Among those constraints is the principle that we will not rule on the constitutionality of a legislative act if we are able to decide the case without reaching constitutional considerations." *Trust*, ¶ 24 (*quoting State v. Still,* 273 Mont. 261, 263, 902 P.2d 546, 548 (1995)). Here, the subject statutes clearly set forth the respective pre-trial responsibilities of the prosecutor and the defendant, so we are able to decide this case without reaching constitutional issues. Because the State fully complied with the requirements of § 46-15-322, MCA, and we decline to address Normandy's

constitutional claim arising from the discrepancies in the respective disclosure statutes, we hold the District Court did not abuse its discretion in allowing Widmer to testify.

¶20 **Issue 2: Did the District Court err in refusing to dismiss a prospective juror for cause?**

¶21 A challenge for cause as to a prospective juror may be granted if a court determines the juror has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA.

¶22 In determining whether a juror should be excused for cause, the court must examine both the statutory language and the totality of the circumstances. *State v. Robinson*, 2008 MT 34, ¶ 8, 341 Mont. 300, ¶ 8, 117 P.3d 488, ¶ 8. If voir dire raises serious doubts about the ability to be fair and impartial the juror should be removed. *Robinson*, ¶ 8. If a juror has a fixed opinion of the defendant's guilt, the district court should excuse the juror. *Robinson*, ¶ 9. However, if the prospective juror merely expresses concern about impartiality but believes he can fairly weigh the evidence, the court is not required to remove the juror. *Robinson*, ¶ 10.

¶23 Here, a prospective juror stated during voir dire that he had a predisposition against domestic violence because it had affected his wife in her first marriage. However, he did not voice a predisposition regarding the guilt or innocence of Normandy, and asserted he could be fair and impartial. In discussing the potential bias, the following conversation occurred:

> Defense:     So would you agree there is a bias?

7

Juror:      Yes.  But the bias would be mainly toward probably sentencing rather than guilt or innocence.

Defense:    You understand in Montana the jury has nothing to do with sentencing; you only find whether or not –

Juror:      No, I didn't understand that.

Defense:    So it only applies to whether or not the facts fit.  So you are saying you have a bias toward sentencing, which means you're already looking at getting to a guilty verdict?

Juror:      No, but if it came in guilty, I would lean toward a heavier sentence than a lighter sentence if I did not have this bias.

.   .   .

Court:      All right.  Well, sir, now you do understand, then, the jury's task in this case is merely to determine whether or not this Defendant committed this particular offense and you will not be involved in any of the sentencing phase?

Juror:      Okay.  I did not understand that.  Okay.

Court:      And do you, at this point in the trial, do you feel you could give the Defendant a fair trial as to whether or not he committed the offense of domestic violence?

Juror:      I could.

Court:      So the bias you have, as I understand it, is merely against that type of an offense, and that's natural and logical.  It is a crime.  But you're saying you have no bias against this Defendant merely because he's been charged with that offense.

Juror:      No, no, not that.

Court:      And do you feel you could base any verdict solely on the evidence presented in the courtroom and the jury instructions and nothing else?

Juror:      Yes, sir.

At no time during the voir dire did the juror state or infer that he had a fixed opinion on the guilt or innocence of Normandy.

¶24    Normandy relies on *Golie* to support his assertion that the trial court abused its discretion in denying the challenge for cause. In *Golie*, a potential juror stated that DUI was a sore subject for him due to his past experience with a drunk driver, and that he was angry at drunk drivers and the attorneys involved in his incident. *Golie*, ¶ 26. The prospective juror also expressed he "probably" was angry, "probably" could be unbiased, but would not want a juror like him if he were on trial. *Golie*, ¶¶ 11-12. The District Court denied the challenge for cause, and on appeal we reversed that decision concluding that the prospective juror possessed a state of mind that would prevent him from being impartial. *Golie*, ¶ 28.

¶25    By contrast, the prospective juror in this case expressed his concerns about the crime of domestic violence because such violence had affected his wife in her first marriage. However, he made it clear that he was biased against the crime, not the defendant. Unlike the juror in *Golie*, whose left arm was shattered as a result of the actions of a drunk driver and who repeatedly insisted that the defendant would not want him as a juror in his DUI case (*Golie,* ¶¶ 11-12), the juror in this matter was unequivocal in his assertion that he could be fair in assessing whether the defendant was guilty of the charged offense. Therefore, we conclude that *Golie* is inapposite, and that the District Court did not abuse its discretion in denying Normandy's challenge of the subject juror for cause.

¶26    Affirmed.

/S/ PATRICIA COTTER

We concur:

/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ JIM RICE