DA 13-0011

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 11

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JEREMIAH ALLEN JOHNSON,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DC 12-109
                  Honorable Robert L. Deschamps, III, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

              Wade Zolynski, Chief Appellate Defender; Nicholas C. Domitrovich,
              Assistant Appellate Defender; Helena, Montana

       For Appellee:

              Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant
              Attorney General; Helena, Montana

              Fred R. Van Valkenburg, Missoula County Attorney; Jennifer Clark,
              Deputy County Attorney; Missoula, Montana


                          Submitted on Briefs:  December 18, 2013
                                  Decided:  January 21, 2014


Filed:

_____
                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Jeremiah Allen Johnson (Johnson) appeals from his conviction in the Fourth Judicial District Court, Missoula County, of burglary in violation of § 45-6-204(1), MCA. We affirm and restate Johnson's sole issue on appeal as follows:

¶2 *Did the District Court abuse its discretion when it denied Johnson's motion to excuse Juror Harsell for cause?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On February 11, 2012, Johnson drove to the home of his ex-girlfriend, Kristy Horvath (Horvath), and her roommate, Tye Diamond (Diamond). As the result of a previous disagreement between Johnson and Diamond, Johnson had been told by Diamond that he was not welcome there. When Johnson arrived that night, Horvath asked him to leave because Diamond was present. Johnson complied, but continued to drive around the neighborhood for some time.

¶4 Later that night, Johnson returned to the home and knocked at the door, which was answered by a guest, Katrina Brenna (Brenna). Although Brenna opened the door to Johnson in the hope of calming him down, he pushed his way into the home and punched another guest, Tommy McDonald (McDonald), in the face, breaking his nose. Diamond attempted to intervene and was struck several times by Johnson. Eventually, the parties went outside where the altercation continued until Johnson said "I'm done" and law enforcement arrived.

¶5 The State subsequently charged Johnson with one count of burglary and two counts of misdemeanor assault. On July 17, 2012, Johnson pleaded guilty to the assaults,

2

but proceeded to a jury trial on the burglary charge. During *voir dire*, Johnson's counsel asked the venire panel if anyone "would inherently think that a law enforcement officer is more believable than a non-officer, a citizen?" Juror Harbaugh responded in the affirmative, and was dismissed by the District Court after explaining his view that law enforcement officers never lie under oath. Johnson's counsel then asked again if "[a]nybody . . . believes that officers are more inherently believable," whereafter the following exchange took place with Juror Harsell (Harsell):

> [ ] HARSELL: Well, yeah. I—I had occasion to work with a lot of police officers when I was—and sheriff's deputies, when I was involved with the Fair. They provide the security. And I generally found them to be a very trustworthy bunch. On the other hand, I do know of a case where one of the people that I trusted most ended up being charged with a crime, you know. I want to say a City police officer. I believe a detective.
>
> [DEFENSE COUNSEL]: So similar question, then, like to what the judge asked Mr. Harbaugh. Do you believe that law enforcement officers always tell the truth?
>
> [ ] HARSELL: Not always, no.
>
> [DEFENSE COUNSEL]: Okay. So would you be able to take any—just like any other witness, their testimony with a grain of salt?
>
> [ ] HARSELL: Whether you—I think a grain of salt is way too light. I just tend to find them more believable than the average person.
>
> [DEFENSE COUNSEL]: So, again, you would find—for example, if Mr. Johnson were to testify you would find the officer more believable than Mr. Johnson; is that correct?
>
> [ ] HARSELL: Well, as—as Mr. Harbaugh said, it would—I'd look at the—I'd have to look at the people to decide. But I'm inherently more likely to believe a police officer than the general public, I think.

¶6 Following this discussion, Johnson's counsel challenged Harsell for cause. The District Court did not immediately rule on the motion, but instead questioned Harsell further:

> [DISTRICT] COURT: Mr. Harsell, do you think you could, I mean, assess each witness on their own merits and make your own decision, based on the way they perform on the witness stand or demeanor, their—
>
> [ ] HARSELL: (Nods head.)
>
> [DISTRICT] COURT: —intelligence, apparent intelligence, their means of knowledge of the issues that they're testifying about and so forth, and make a balanced decision about who to believe and—when they testify?
>
> [ ] HARSELL: On a person-by-person basis, yes.
>
> [DISTRICT] COURT: Regardless of what their occupation is?
>
> [ ] HARSELL: I believe so.

The District Court then denied Johnson's motion to excuse Harsell for cause, which resulted in Johnson's decision to exercise his final peremptory challenge on Harsell.

¶7 Johnson was convicted and sentenced to ten years to the Montana State Prison with three years suspended on the burglary charge, and six-month sentences on each of the assaults, running concurrent with the ten-year prison term. Johnson appeals.

## STANDARD OF REVIEW

¶8 We review a district court's denial of a challenge for cause using an abuse of discretion standard. *State v. Golie*, 2006 MT 91, ¶ 6, 332 Mont. 69, 134 P.3d 95 (citation omitted). "A district court abuses its discretion if it fails to grant a challenge for cause when a juror's statements during *voir dire* raise serious doubts about the juror's ability to be fair and impartial," *State v. Allen*, 2010 MT 214, ¶ 25, 357 Mont. 495, 241 P.3d 1045

4

(citations omitted), or "actual bias is discovered," *State v. Rogers*, 2007 MT 227, ¶ 18, 339 Mont. 132, 168 P.3d 669 (citation omitted).

## DISCUSSION

¶9     *Did the District Court abuse its discretion when it denied Johnson's motion to excuse Juror Harsell for cause?*

¶10     Both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee the right to a trial by an impartial jury. *State v. Hausauer*, 2006 MT 336, ¶ 20, 335 Mont. 137, 149 P.3d 895.  During *voir dire*, "[e]ach party may challenge jurors for cause, and each challenge must be tried by the court."  Section 46-16-115(1), MCA.  A specified ground for a challenge for cause is that a potential juror has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party."    Section 46-16-115(2)(j), MCA.    We evaluate challenges for cause under this provision in light of the statutory language and the totality of the circumstances presented.  *State v. Marble*, 2005 MT 208, ¶ 10, 328 Mont. 223, 119 P.3d 88.  We have held that "jurors should be disqualified based on their prejudices only where they have 'form[ed] *fixed opinions* of the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court.'"  *State v. Falls Down*, 2003 MT 300, ¶ 23, 318 Mont. 219, 79 P.3d 797 (citations omitted) (emphasis added).  However, we have also clarified that the "'fixed opinion' rule is only one argument that may be made under the 'state of mind' basis for a challenge for cause set forth in § 46-16-115(2)(j), MCA."  *Golie*, ¶ 25.  When

5

reviewing a challenge for cause, we emphasize a juror's "spontaneous, and usually initial, statements or responses." *Hausauer*, ¶ 23. If a district court improperly denies a challenge for cause, "such an abuse of discretion is conclusively prejudicial and requires automatic reversal." *State v. Freshment*, 2002 MT 61, ¶ 14, 309 Mont. 154, 43 P.3d 968. However, we will affirm a district court's denial of a challenge for cause if "the juror convincingly affirms his ability to lay aside any misgivings and fairly weigh the evidence." *Allen*, ¶ 26.

¶11 Johnson does not argue that Harsell expressed a "fixed opinion" of his guilt or innocence, but rather, that Harsell raised serious questions about his ability to act with entire impartiality when he said, "I'm inherently more likely to believe a police officer than the general public, I think." Johnson also argues that Harsell "upped the ante when he stated that he could not take law enforcement testimony with a grain of salt . . . because he thought 'a grain of salt is way too light.'" Johnson asserts that these remarks amounted to a "stated bias" which prevented Harsell from acting impartially in a case relying heavily on law enforcement testimony. In support, Johnson notes that "dismissal for cause is favored when a serious question arises about a juror's ability to be impartial," citing *State v. Richeson*, 2004 MT 113, ¶ 14, 321 Mont. 126, 89 P.3d 958.

¶12 The State maintains that Harsell's responses as a whole "did not establish that he harbored actual bias or that his state of mind prevented him from acting impartially." The State notes Harsell's stated belief that law enforcement officers do not always tell the truth and his assurance that he would judge the credibility of each witness individually. The State also points to other remarks by Harsell indicating some negative feelings about

6

law enforcement and his willingness to set aside his personal experiences and listen impartially to the evidence presented:

> [ ] HARSELL: I have a lot of respect for the law enforcement people, particularly in this area. I just have had a lot of disappointments in the legal system, just in how slow.
>
> [STATE]: Yeah?
>
> [ ] HARSELL: And how just lack of follow-up around some things. But I don't think it's going to affect anything. But I thought since you asked, it's worth mentioning. I've had some disappointments.
>
> [STATE]: Personal disappointments?
>
> [ ] HARSELL: Um, pretty much, yeah. Just an example, my wife, working in a county office, had her purse stolen—had her checkbook stolen and knew who did it. And the police knew who did it, but no action was taken until this person was finally brought in for something else. And at that time, they got around to charging her. But it's just one of—some of the—
>
> [STATE]: You think that that—you can separate those?
>
> [ ] HARSELL: I can, yes.
>
> .  .  .
>
> [ ] HARSELL: I have been a victim of burglary and theft many times. I don't know how much you want me to go into detail.
>
> [STATE]: Well, my main concern is how that will affect the way that you listen to this case. If you're going to come in thinking that he's guilty already or—
>
> [ ] HARSELL: I'm not going to come in thinking he's guilty already, but with a certain amount of anger about this for people that do such.
>
> [STATE]: Are you able to sit and listen to the evidence and not put him in the situation of where you were—he didn't do it to you.
>
> [ ] HARSELL: I believe so, yes.
>
> [STATE]: Okay. How many people think he did something wrong?

[ ] HARSELL: At this point?

[STATE]: Yeah.

[ ] HARSELL: No.

¶13 The State analogizes the circumstances here to *State v. Normandy*, 2008 MT 437, 347 Mont. 505, 198 P.3d 834 (juror expressing bias against the crime of domestic violence but asserting that he could be fair and impartial did not require dismissal for cause); *Marble* (juror expressing religious bias against homosexual activity but insisting that he could follow the law did not require dismissal for cause); *Falls Down* (two jurors admitting to holding preconceived opinions about the defendant's guilt but stating that they could follow the district court's instructions and listen to the evidence did not require dismissal for cause); *State v. Robinson*, 2008 MT 34, 341 Mont. 300, 177 P.3d 488, *overruled in part on other grounds*, *State v. Gunderson*, 2010 MT 166, 357 Mont. 142, 237 P.3d 74 (juror struggling with the presumption of innocence but convincing the district court that she could lay aside her concerns did not require dismissal for cause); *Rogers* (juror initially proclaiming a lack of objectivity in regard to sexual abuse but later indicating that he could be unbiased and impartial did not require dismissal for cause); and *State v. Heath*, 2004 MT 58, 320 Mont. 211, 89 P.3d 947. We find *Heath* particularly instructive.

¶14 In *Heath*, the State charged the defendant with sexual intercourse without consent. *Heath*, ¶ 5. During *voir dire*, prospective juror Caldwell explained that she had volunteered as a rape-survivor advocate in college and that her ex-boyfriend had stalked her. *Heath*, ¶ 17. When asked by defense counsel for more details, Caldwell admitted

8

that she would not want someone with her experience to serve on the jury if she was on trial and then said "I feel I probably shouldn't be on this particular case." *Heath*, ¶¶ 21-22. During follow-up questioning by the State, Caldwell expressed her belief that the State is required to prove its case and that a defendant is innocent until proven guilty. *Heath*, ¶ 23. Caldwell also stated that she would base her decision on "the facts of the case," although she wanted everyone to be aware of her past experiences. *Heath*, ¶ 24. In affirming the district court's denial of the defense's challenge for cause, this Court evaluated the entirety of Caldwell's statements, noting particularly that she "repeatedly stated that she would focus solely on the facts of the case and set her prior experiences aside." *Heath*, ¶ 34.

¶15 Like the juror in *Heath*, Harsell acknowledged his biases but confirmed that he could set aside his prior experiences and "look at the people to decide." He also stated that he had not come to the case believing Johnson was guilty. Although Harsell mentioned positive experiences that he had with law enforcement officers in the past and expressed a belief that they are inherently credible, he also stated his belief that law enforcement officers don't always tell the truth and assured the District Court that he would assess each witness's credibility without regard to occupation, evaluating each witness "[o]n a person-by-person basis."

¶16 Johnson argues that *Heath* is distinguishable because the Court determined that defense counsel had "manipulat[ed]" some of Caldwell's initial responses, citing *Heath*, ¶ 25. While the manipulation issue was a part of our analysis, it was not the only factor considered and does not diminish the similarities between the statements offered by

9

Caldwell and Harsell regarding their ability to set aside their subjective concerns and view the evidence impartially, as required under § 46-16-115(2)(j), MCA.

¶17 Johnson maintains that Harsell's rehabilitating remarks to the District Court followed a series of improper leading questions, which should be disregarded. Johnson argues that "[d]istrict courts may ask 'open-ended questions to allow a veniremember to clarify initial, suspect statements,' (*Allen*, ¶ 26) but should not elicit 'coaxed recantations' in order to rehabilitate a potential juror," citing *State v. Braunreiter*, 2008 MT 197, ¶ 11, 344 Mont. 59, 185 P.3d 1024.

¶18 We conclude the District Court did not elicit a "coaxed recantation" in this case. Turning again to *Heath*, we observe that the District Court there questioned the juror (Caldwell) in the following manner:

> [DISTRICT] COURT: Can you put aside everything that you know, that you have learned from your education and from your volunteer work, can you put that aside and base your judgment solely on the testimony and evidence presented in this courtroom?
>
> CALDWELL: Yes.
>
> [DISTRICT] COURT: And follow the law as given to you by the court?
>
> CALDWELL: Yes.

We determined that "[t]his questioning was not an attempt by the District Court to shift the focus from Caldwell's beliefs or to cause her to recant her initial statements. The District Court merely attempted to clarify." *Heath*, ¶ 29. Here, the District Court questioned Harsell in a nearly identical fashion to determine whether he could assess each witness on their own merits. This was not an attempt to prompt Harsell to recant,

but rather, to clarify his initial statements. The District Court merely sought to determine the extent to which Harsell's prior experiences with law enforcement would impact his ability to fairly judge each witness's credibility, and did not engage in improper rehabilitation.

¶19 Finally, Johnson argues that "[e]ach of the cases cited by the State can be distinguished from the case at hand because these cases presented situations where the initial, spontaneous statements by the potential jurors indicated an ability to set aside any concerns and act with entire impartiality." Johnson asserts that, in contrast, Harsell's "spontaneous statements clearly established his bias." We disagree. From the outset, Harsell qualified his positive statements in regard to law enforcement officers by spontaneously adding that he would look to witnesses individually and listen to their testimony to decide their veracity. Moreover, while a juror's initial, spontaneous statements are important, we do not view them in a vacuum, but instead look at the juror's responses as a whole, including later responses to questioning. *Braunreiter*, ¶¶ 9-11. Here, Harsell's statements as a whole establish his ability to set aside any preconceptions and judge the witnesses fairly. *See Allen*, ¶ 26.

¶20 We conclude by noting that we give deference to a district court's determination regarding a challenge for cause. *Robinson*, ¶ 13 ("[T]he decision whether to grant a challenge for cause is within the discretion of the trial judge, who has the ability to look into the eyes of the juror in question, and to consider her responses in the context of the courtroom."); *State v. Hatten*, 1999 MT 298, ¶ 28, 297 Mont. 127, 991 P.2d 939 ("Because the trial court is best able to observe the jurors and to decide the potential for

prejudice when allegations of juror misconduct are raised, the trial court has significant latitude when ruling on such matters.").

¶21    We affirm.

/S/ JIM RICE

We concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BETH BAKER