DA 13-0141

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 140

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JAMES BRADLEY CUDD, SR.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Big Horn, Cause No. DC 11-23
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender; Greg Hood, Assistant
Appellate Defender; Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant
Attorney General; Helena, Montana

            Georgette Hogan, Big Horn County Attorney; David Sibley, Deputy
County Attorney; Hardin, Montana

                                Submitted on Briefs:  April 30, 2014
                                      Decided:  June 3, 2014

Filed:

                       _____
                               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     James Bradley Cudd, Sr., (Cudd) appeals from his conviction in the Twenty-Second Judicial District Court, Big Horn County, for committing the offense of Sexual Intercourse without Consent in violation of § 45-5-503, MCA. We affirm and restate Cudd's sole issue on appeal as follows:

¶2     *Did the District Court abuse its discretion by denying Cudd's challenge for cause of a juror whose daughter had been the victim of sexual violence?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     The State charged Cudd with Sexual Intercourse without Consent, alleging that Cudd engaged in a continual sexual relationship with his stepdaughter, D.F., from 2006 to 2010. At the time the offenses began, D.F. was twelve years old, under the age of statutory consent in Montana.

¶4     The case against Cudd proceeded to trial on May 21, 2012. Voir dire was conducted by initially asking general questions of the prospective jurors, followed by an opportunity for confidential voir dire of individual jurors. Several jurors, including juror M.R., asked to discuss matters privately in chambers. This colloquy followed between M.R., the District Court, prosecutor David Sibley, and defense counsel Robert Kelleher:

> [THE COURT:] And, [M.R.], I probably won't do a lot of the questioning, I'll leave that to the attorneys, but if you could just tell me what the nature of your concern is.
>
> [M.R.]: My daughter has been in numerous abusive relationships, and one of those was rape.
>
> THE COURT: So you've had a daughter that's been the subject of some sexual violence; is that correct?

2

[M.R.]: Yes.

THE COURT: Mr. Sibley.

MR. SIBLEY: [M.R.], do you believe that it would make it impossible for you to judge the evidence fairly and hold the State to its burden that we still must prove each element of the crime beyond a reasonable doubt?

[M.R.]: I would do my best to be fair. That's all I can say.

MR. SIBLEY: That's all we're asking, is just that the purpose of this is to, as the judge said, give you the privacy to make those disclosures without being in the public forum. But that really is the relevant question: Could you judge the evidence fairly and give Mr. Cudd a fair trial in which he's entitled?

[M.R.]: Uh-huh.

MR. SIBLEY: Do you believe you could?

[M.R.]: Yeah.

THE COURT: Anything else, Mr. Sibley?

MR. SIBLEY: Nothing further from the State.

THE COURT: Mr. Kelleher.

MR. KELLEHER: [M.R.], what was the outcome, were any of those people prosecuted?

[M.R.]: One of them was, yes.

MR. KELLEHER: What was the outcome of that?

[M.R.]: He was found guilty.

MR. KELLEHER: Would anything that had to do with that trial—I mean, the question is whether you're tilting more to toward one side or the other. That's the issue. And because of that experience whether you would be more in favor of the prosecution as opposed to the defendant.

[M.R.]: Well, in that case, of course, I would be more secured to my daughter.

MR. KELLEHER: I'm sorry. Based on your experience in the case with your daughter, whether in this case today you'd be more tuned into the prosecution or leaning more toward the prosecution just from the outset?

[M.R.]: To be honest, I'd probably be going towards the victim. You know, looking at their point of view.

MR. KELLEHER: So you'd be more likely to believe the testimony of the alleged victim in this case than you would a defense witness?

[M.R.]: I hate to say that, but yes, I probably would.

MR. KELLEHER: I think we need to excuse her for cause, Your Honor.

MR. SIBLEY: Your Honor, may I have the chance to rehabilitate?

THE COURT: You may.

MR. SIBLEY: What were the charges that were filed?

[M.R.]: The one that was found guilty was domestic abuse.

MR. SIBLEY: So that wasn't a rape case?

[M.R.]: No, that was not a rape case.

MR. SIBLEY: As you said, you could judge the credibility of the witnesses and if you would not believe the witness—you would be more inclined if you didn't believe them—you would still hold the State to the burden.

[M.R.]: Yes.

MR. SIBLEY: I believe she's capable to serve as a juror. I believe she has stated that she can hold the State to its burden of proof and burden and be fair and impartial.

MR. KELLEHER: I'll continue.

THE COURT: All right.

4

MR. KELLEHER: I request that she removed for cause.

THE COURT: The challenge for cause is denied. [M.R.], I appreciate you coming in.

¶5 The defense subsequently used all of its preemptory challenges, including one to excuse M.R. Cudd was convicted following trial and sentenced to the Montana State Prison. He appeals.

## STANDARD OF REVIEW

¶6 "We review a district court's denial of a challenge for cause using an abuse of discretion standard." *State v. Johnson*, 2014 MT 11, ¶ 8, 373 Mont. 330, 317 P.3d 164 (citation omitted). A district court abuses its discretion if it denies a challenge for cause when a prospective juror's statements during voir dire raise serious doubts about the juror's ability to be fair and impartial or actual bias is discovered. *Johnson*, ¶ 8 (citations omitted). If a district court abuses its discretion by denying a legitimate challenge for cause, the error is structural and automatic reversal is required. *State v. Good*, 2002 MT 59, ¶¶ 62-63, 309 Mont. 113, 43 P.3d 948.

## DISCUSSION

¶7 *Did the District Court abuse its discretion by denying Cudd's challenge for cause of a juror whose daughter had been the victim of sexual violence?*

¶8 A criminal defendant has a fundamental right to be tried by an impartial jury. *State v. Allen*, 2010 MT 214, ¶ 25, 357 Mont. 495, 241 P.3d 1045 (citation omitted). To safeguard this right, "[e]ach party may challenge jurors for cause, and each challenge must be tried by the court." Section 46-16-115(1), MCA. A challenge for cause may be taken when a juror demonstrates "a state of mind in reference to the case or to either of

5

the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA.[1] A court must decide a challenge for cause under § 46-16-115(2)(j), MCA, based on the totality of the circumstances presented. *State v. Golie*, 2006 MT 91, ¶ 8, 332 Mont. 69, 134 P.3d 95. As a general principle, "[a] prospective juror's 'spontaneous statements' are given more weight than 'coaxed recantations' elicited by counsel because spontaneous statements are 'most likely to be reliable and honest.'" *State v. Jay*, 2013 MT 79, ¶ 19, 369 Mont. 332, 298 P.3d 396 (citations omitted).

¶9  Jurors who state that they are unable or unwilling to suspend their prejudicial beliefs and follow the law should be excused for cause. *Jay*, ¶ 20 (citation omitted). However, "a juror should not be removed merely because she voices a concern about being impartial—every person comes to jury duty with preconceptions." *Jay*, ¶ 20; *accord State v. Normandy*, 2008 MT 437, ¶ 22, 347 Mont. 505, 198 P.3d 834 ("[I]f the prospective juror merely expresses concern about impartiality but believes he can fairly weigh the evidence, the court is not required to remove the juror."). We have recognized that "[i]n reality, few people are entirely impartial regarding criminal matters . . . ." *Allen*, ¶ 26 (citation omitted). Therefore, the critical inquiry is whether a prospective juror can convincingly affirm his or her ability to lay aside any misgivings and fairly weigh the

---

[1] We have also explained that "jurors should be disqualified based on their prejudices only where they have 'form[ed] fixed opinions o[f] the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court.'" *State v. Falls Down*, 2003 MT 300, ¶ 23, 318 Mont. 219, 79 P.3d 797 (citations omitted). The "fixed opinion" principle is only one basis on which prejudice may be established under § 46-16-115(2)(j), MCA. *Johnson*, ¶ 10 (citation omitted). Cudd does not argue here that M.R. held a "fixed opinion" of his guilt and, therefore, we do not address this principle.

evidence. *See Allen*, ¶ 26 (citation omitted). Because district court judges sit in the best position to observe the disposition of prospective jurors, we grant lower courts a certain degree of deference in making this determination. *Johnson*, ¶ 20 (citations omitted); *Allen*, ¶ 26 (citations omitted).

¶10 Cudd argues that M.R.'s "state of mind prevented her from acting with entire impartiality." He maintains that M.R. acknowledged her bias several times: (1) when she stated, "Well, in that case, of course, I would be more secured to my daughter"; (2) when she further stated, "To be honest, I'd probably be going towards the victim. You know, looking at their point of view"; and (3) when asked by defense counsel, "So you'd be more likely to believe the testimony of the alleged victim in this case than you would a defense witness," she replied, "I hate to say that, but yes, I probably would." Cudd argues that these statements "raised serious questions about [M.R.'s] ability to be impartial" and "deprived him of the fundamental right to be tried by an impartial jury" when the District Court denied his challenge for cause. He characterizes M.R.'s initial assurances that she could judge the evidence fairly and hold the State to its burden of proof as "attempts to show respect for the judicial process and avoid confrontation with those officers of the court that were peppering her with questions," and not as evidence of impartiality.

¶11 The State contends that "M.R.'s comments did not establish that she harbored actual bias or that her state of mind prevented her from acting impartially." It argues that, although M.R. honestly advised the court of her past experiences and perspectives, she at no time indicated she was unwilling to fairly and objectively evaluate the case. The State

7

points to the fact that when directly asked, M.R. clearly affirmed her ability to remain impartial despite her daughter's experiences. In support of its position, the State analogizes to several cases, including our recent holding in *Johnson*.

¶12 In *Johnson*, the State's case relied heavily on law enforcement testimony to establish that Johnson burglarized a residence. During voir dire, prospective juror Harsell (Harsell) stated that he believed law enforcement officers "to be a very trustworthy bunch" and found "them more believable than the average person." When asked by defense counsel whether he could take officer testimony with "a grain of salt," he replied, "I think a grain of salt is way too light. I just tend to find them more believable than the average person." *Johnson*, ¶ 5. Harsell then told the court that he could assess the witnesses on a person-by-person basis, regardless of occupation. *Johnson*, ¶ 6. This Court found it persuasive that, even though Harsell admitted to harboring bias, he assured the district court that he could set aside his prior experiences and evaluate the witnesses fairly. *Johnson*, ¶¶ 15, 19. We affirmed the district court's determination not to excuse Harsell for cause. *Johnson*, ¶ 21.

¶13 Similar to the juror in *Johnson*, M.R. expressed some concerns about impartiality, but also affirmatively stated that she could judge the evidence fairly and give Cudd a fair trial. Notably, M.R.'s seemingly biased statements arose only after defense counsel required her to choose between the prosecution and the defense—between the victim and a defense witness. In *State v. Crosley*, 2009 MT 126, ¶ 21, 350 Mont. 223, 206 P.3d 932, defense counsel posed a nearly identical choice to potential juror Aronson when he asked, "If it came down to Detective Clarkson saying A and an unknown witness saying B, who

8

are you going to believe?" Aronson responded, "Probably Mr. Clarkson." On appeal, we reasoned that "[w]hile there was much questioning about Aronson's ability to fairly weigh testimony from Detective Clarkson against other testimony, this is significantly different than the type of improper state of mind that raises serious doubts about a juror's ability to be fair and impartial." *Crosley*, ¶ 36. We noted that even though Aronson admitted he would give credibility to Detective Clarkson, he also stated he would keep an open mind and look to the facts. We explained that, "[w]hile these answers perhaps lack the conviction that defense counsel would prefer, they do not raise serious doubts about Aronson's ability to be fair and impartial." *Crosley*, ¶ 37.

¶14 Cudd attempts to distinguish precedent cited by the State on the grounds that M.R. "neither retracted nor disavowed her bias" *after* stating that she would probably favor the testimony of the victim, and that the subsequent rehabilitative questions posed by the State related strictly to the burden of proof and not M.R.'s bias. According to Cudd, "[o]nce [M.R.'s] bias was unveiled, the prosecutor used the burden of proof concept as a red herring instead of addressing the real issue of impartiality."

¶15 While we recognize the distinction drawn by Cudd on this point, we do not find it determinative. Certainly, some of our cases have involved factual situations where the prospective juror disavowed his or her stated bias during follow-up questioning by the prosecution or the court. However, there is no authority suggesting that a district court is required to grant or deny a challenge for cause strictly based on answers given *after* a juror's potential bias is revealed. To the contrary, we evaluate a prospective juror's responses as a whole. *Golie*, ¶ 10. In situations where, as here,

9

"a juror makes conflicting statements . . . the decision whether to grant a challenge for cause is within the discretion of the trial judge, who has the ability to look into the eyes of the juror in question, and to consider her responses in the context of the courtroom, and then determine whether serious doubts exist about the juror's ability to be impartial."

*Crosley*, ¶ 35 (citation omitted). M.R. expressly confirmed her ability to judge the evidence fairly and afford Cudd the fair trial to which he was entitled. These views were declared by M.R. in her initial responses. *See Jay*, ¶ 19 ("A prospective juror's 'spontaneous statements' are given more weight than 'coaxed recantations' elicited by counsel . . . ."). We conclude that the District Court did not abuse its discretion in denying the challenge for cause.

¶16 Affirmed.


/S/ JIM RICE

We concur:


/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON