Justice Jim Rice delivered the Opinion of the Court.
***2 ¶1 Bruce Arnold Anderson (Anderson) appeals from his conviction in the Third Judicial District Court, Powell County, of sexual intercourse without consent, a felony in violation of § 45-5-503(1), MCA ; burglary, a felony in violation of § 45-6-204, MCA ; and sexual assault, a misdemeanor in violation of § 45-5-502, MCA. We address the following issue, and reverse and remand:
Did the District Court abuse its discretion by denying Anderson's motion to strike juror M.J. for cause?
*1136 FACTUAL AND PROCEDURAL BACKGROUND
¶2 On August 20, 2015, Bruce Anderson and Shelley Locher spent the evening socializing and drinking alcohol. Afterward, Anderson drove Locher back to her house on his motorcycle. Locher could only recall "snapshots" of what happened next. She described being physically ***3 incapacitated but cognizant of Anderson climbing through her bedroom window, lying in bed beside her, and then leaving the next morning. She also described feeling "very sore" and swollen throughout her "whole lower pelvic area" including inside and outside her vagina. According to Locher, Anderson returned to her house later that day, walked downstairs to the basement where she was doing laundry, and grabbed her breasts. Locher claims she pushed Anderson away and told him to leave.
¶3 Locher told law enforcement about the alleged assault in November 2015 and participated in a forensic interview. The State filed charges against Anderson in January 2016, alleging he entered Locher's residence through the window and engaged in sexual intercourse with her without her consent. A jury trial was held in March 2017.
¶4 During voir dire, the prospective jurors were asked general questions about whether they could follow the instructions and law given to them by the judge, and render a verdict after listening to the evidence. Defense counsel explained the presumption of innocence and Anderson's right not to testify and asked, "Would anybody hold that against Mr. Anderson if he doesn't testify?" In response, Defense counsel noted, "Everybody's shaking their heads no." At the close of voir dire, the District Court informed the jury panel that they would be asked to leave the courtroom while the attorneys exercised preemptory challenges and then brought back in, at which time the final jury members would be seated. Before dismissing the jurors, the District Court said, "don't be talking about the case among yourselves. Don't be forming or expressing an opinion about the case. Just talk about the weather, what you saw on TV last night as long as it's not about the case." After the jurors left, the parties each exercised their preemptory challenges. The District Court confirmed the list of selected jurors, and asked for all the potential jurors to be brought back into the courtroom to be seated and sworn in.
¶5 During the short recess before seating of the jurors, the bailiff informed the court that a juror, M.J., had stated to the bailiff that "he is pretty sure the Defendant is guilty" based upon the juror's assessment of the wording used by defense counsel during voir dire. The court immediately held a meeting in chambers with counsel to discuss the juror's comments. The court said, "I guess the State would say, let's proceed. Got a juror saying the guy's guilty before we even have any evidence. What's the Defense say about it?" Defense counsel suggested M.J. be dismissed for cause. The court asked for M.J. to be brought into chambers for questioning by the parties and noted a ***4 different juror from the panel could be substituted if the court decided to dismiss him.
¶6 During questioning in chambers, the State asked M.J. whether he had already formed an opinion about the culpability of Anderson. M.J. stated, "I have a leaning." When asked to clarify, he said, "Yeah, like, like just based upon how Defense counsel was asking questions to all jurors. There was a few wordings [sic] that made me uh believe I know how he's going to push the defense-what, what the main arguments are going to entail." M.J. continued, "I don't know if I could be able to push those sort of things all the way to the side." The State asked M.J. if he could listen to the evidence, follow the judge's instructions, and suspend his decision until the close of trial when all the evidence has been presented. M.J. responded, "I think I can 100 percent try, but life moves forward and there's certain things from my past, that all of our lives that we can't not [sic] remove." He continued, "I can do my absolute best and if I'm selected I will 100 percent try to be as entirely [sic] as I can."
¶7 Defense counsel asked M.J. whether he was bothered that Anderson may not testify. M.J. responded, "Uh that's one of the things. The, the belief that, that an innocent man has nothing to hide prevails slightly above-the idea of uh being accidentally trapped by a trick question from, from the other side and *1137 counsel." When asked whether he can "be impartial and not make up [his] mind until [he] hear[s] all the evidence," M.J. said, "I believe I could. I do believe that. There just is a slight bit of preconception stepping in, forward now. And that's, that's why I told the Bailiff why, what I wanted you to be aware of." Defense counsel then moved to strike M.J. for cause.
¶8 The court then advised M.J. that he was being questioned because of his comment to the bailiff that he possessed a "leaning" that Anderson was guilty. M.J. said, "I believe the words that I told him was I believe how, I know how the Defense is going to argue and then that leads me to believe they are coming from a more defensive standpoint than just purely we're going to lay down the facts for you to decipher." The court then had the following colloquy with M.J.:
COURT: Alright, well the way trials work and if I may be so bold is that jurors and other people sit there and they listen to a witness and the witness says something. And they go, oh that witness must be telling the truth and then they listen to another witness and they go, hmm boy maybe that one's telling the truth. And you hear argument from the State, and oh boy that sure sounded good or that didn't make any sense to me and then the other guy argues, and oh I like that or I didn't like it. The ball ***5 goes back and forth and uh you know, my concern is, is that you seem to have kind of start [sic] to formulate an opinion when you haven't heard anything yet.
My question to you is do you think you can imagine how important it is we're going to determine whether or not Mr. Anderson is guilty or not guilty of criminal charges. Can you sit on that jury, listen to all the evidence, not make-form any opinion until you've heard everything, you've heard all the arguments of counsel and not form any opinion about it and you keep an open mind. A completely open mind on all the issues that you're going to be asked to decide, guilt or innocence. Guilty or not guilty. Proof beyond a reasonable doubt. Listen to all my instructions. Consider all the evidence. But not form any opinion until you get into the jury room and you're told now you can deliberate. Can you keep an open mind and be a fair juror in that manner?
M.J.: I can absolutely keep an open mind
COURT: So that's a yes?
M.J.: Yes, yes to your question, yes.
COURT: Alright, so I don't need to be concerned about the comment you made to [the bailiff]? If you started to form an opinion you're going to uh, you can put that aside and be a fair and equitable juror, wait until it's submitted to you to form an opinion?
M.J.: Yes.
COURT: Alright, the requested exemption is denied. [M.J.] is a qualified juror.
After the court denied defense counsel's motion to strike M.J. for cause, the trial resumed with the jury being empaneled and sworn, including M.J.
¶9 The jury returned a guilty verdict on all counts. Following trial, Anderson obtained new counsel who filed two motions for a new trial because of alleged juror bias and improper jury instructions relating to the applicable mental states of sexual intercourse without consent and burglary. The District Court denied both motions.
¶10 Anderson appeals.
STANDARD OF REVIEW
¶11 We review a district court's denial of a challenge for cause for abuse of discretion. State v. Cudd , 2014 MT 140, ¶ 6, 375 Mont. 215, 326 P.3d 417 (citation omitted). "A district court abuses its discretion if it denies a challenge for cause when a prospective juror's statements ***6 during voir dire raise serious doubts about the juror's ability to be fair and impartial or actual bias is discovered." Cudd , ¶ 6. Improperly denying a legitimate challenge for cause is an abuse of discretion and a structural error requiring *1138 automatic reversal. Cudd , ¶ 6 (citing State v. Good , 2002 MT 59, ¶¶ 62-63, 309 Mont. 113, 43 P.3d 948 ).
DISCUSSION
¶12 Did the District Court abuse its discretion by denying Anderson's motion to strike juror M.J. for cause?
¶13 Anderson argues the District Court erred by denying his motion to strike juror M.J. for cause.[1] Anderson contends that by "spontaneously express[ing] his belief that Anderson was guilty because he would not testify in his own defense," M.J. made "an unequivocal declaration of bias," which should have disqualified him from serving as a juror in this case. The State argues the District Court acted within its discretion to deny Anderson's motion to strike M.J. after further evaluating his fitness to serve.
¶14 Criminal defendants have a fundamental right under both federal and state constitutions to be tried by an impartial jury. U.S. Const. amend. VI ; Mont. Const. art. II, § 24 ; State v. Johnson , 2019 MT 68, ¶ 9, 395 Mont. 169, 437 P.3d 147. "To safeguard this right, '[e]ach party may challenge jurors for cause, and each challenge must be tried by the court.' " Cudd , ¶ 8 (quoting Section 46-16-115(1), MCA ). A prospective juror may be challenged for "having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA. A challenge for cause brought under this statute must be decided based on a totality of circumstances presented. Cudd , ¶ 8.
¶15 "Jurors who state that they are unable or unwilling to suspend their prejudicial beliefs and follow the law should be excused for cause." Cudd , ¶ 9. The court should err on the side of caution and ***7 remove a juror "if questioning raises serious doubts as to the juror's ability to be fair and impartial." State v. Jay , 2013 MT 79, ¶ 19, 369 Mont. 332, 298 P.3d 396 (internal quotation and citation omitted). However, a court is not required to remove a juror who "expresses concern about impartiality but believes he can fairly weigh the evidence." State v. Normandy , 2008 MT 437, ¶ 22, 347 Mont. 505, 198 P.3d 834. "In reality, few people are entirely impartial regarding criminal matters ...."[2] State v. Allen , 2010 MT 214, ¶ 26, 357 Mont. 495, 241 P.3d 1045. Recognizing this, we have held that a prospective juror should be disqualified because of his prejudices only when he has "formed fixed opinions on the guilt or innocence of the defendant which [he] would not be able to lay aside and render a verdict based solely on evidence presented in court" or, as noted above, "when a serious question arises about [his] ability to be fair and impartial." State v. Russell , 2018 MT 26, ¶ 14, 390 Mont. 253, 411 P.3d 1260 (internal quotation and citation omitted). It is within the district court's discretion to assess a juror's impartiality when that juror's comments suggest that he holds a fixed opinion as to the defendant's guilt but then says he can set that opinion aside and follow the law. Jay , ¶ 20.
¶16 Anderson argues that M.J. "spontaneously stated his clear bias" when he told the bailiff he was "pretty sure the Defendant is guilty," and that M.J. "repeatedly stated his bias against all non-testifying defendants" while undergoing questioning from the attorneys and the court. The State answers that *1139 by expressing his opinion as a "leaning," M.J. demonstrated that he held no fixed opinion of Anderson's guilt but merely possessed a "slight bit of preconception." Additionally, the State argues that M.J.'s comment, "an innocent man has nothing to hide," does not mean he is unable to be fair and impartial. Rather, when read in context with M.J.'s admission of holding "a slight bit of preconception," the State contends that M.J. was merely voicing a concern about impartiality, which should not be cause for removal, citing Jay , ¶ 20 ("[A] juror should not be removed merely because [he] voices a concern about being impartial-every person comes to jury duty with preconceptions.").
¶17 In Jay , we considered the difference between a juror who should ***8 be disqualified because of a "fixed opinion" of the defendant's guilt and a juror who has "mere preconceptions" and thus, remains qualified to serve. Jay , ¶ 21. Jay offers an example of the latter. A potential juror expressed having preconceptions about people who drink and drive, indicating that it would be "personally difficult to presume Jay innocent." However, the juror also expressed a clear willingness to presume the defendant innocent if the court instructed her to do so, stating, "I'm going to follow that instruction." We upheld the district court's denial of Jay's challenge for cause, concluding that the juror "did not make comments demonstrating a 'fixed opinion' as to Jay's guilt." Jay , ¶¶ 23-24. We have reached similar conclusions in other cases. See e.g. , State v. Falls Down , 2003 MT 300, ¶¶ 25-27, 30, 32, 35-36, 318 Mont. 219, 79 P.3d 797 (holding that four jurors who expressed opinions that the defendant was guilty, based on what they had seen through media coverage, were still qualified to serve as jurors because, after further questioning, they all agreed to set aside their preconceptions, which we considered demonstrated that they did not hold fixed opinions of the defendant's guilt); and State v. Champagne , 2013 MT 190, ¶¶ 23-24, 26, 371 Mont. 35, 305 P.3d 61 (affirming a district court's denial of a challenge for cause against a juror who made comments suggesting he would prefer that a defendant prove his innocence and that he may be suspicious of a defendant who chooses not to testify but, after listening to the court's instruction on the presumption of innocence, the juror admitted he was unfamiliar with the trial process and agreed to follow the law as the court instructed).
¶18 We have rejected jurors whose biased preconceptions were determined to be fixed opinions about the guilt of the defendant, which could not be laid aside. In State v. DeVore , 1998 MT 340, ¶ 24, 292 Mont. 325, 972 P.2d 816 (overruled on other grounds in Good , ¶ 63 ), two jurors expressed a belief that the defendant "must be guilty of something" because he had been charged with a crime. Defense counsel challenged these jurors for cause, arguing their statements demonstrated an inability to presume innocence and remain impartial throughout the trial. After being instructed on the presumption of innocence, both jurors agreed not to make a decision about the defendant's guilt until after hearing all of the evidence, but they both reiterated their belief that the defendant was "involved" or "guilty of something." DeVore , ¶¶ 18-19. Although these jurors "did not express an unequivocal opinion that DeVore was guilty as charged," we concluded that "their adherence to the belief that 'he is guilty of something' plainly demonstrated a serious question about their ability to act with impartiality and to afford DeVore the presumption of ***9 innocence to which he was entitled." DeVore , ¶ 24. See also Johnson , ¶ 15 (holding a juror was disqualified who made "multiple spontaneous statements" that "she would likely be unable or unwilling to set her personal view and bias aside and vote for acquittal if the State proved that [the defendant] assaulted the alleged victim but was unable to prove that she was his 'partner' " as required by the domestic assault statute being charged).
¶19 The unusual scenario here began when juror M.J., during a recess after voir dire and after the court had instructed the jurors not to discuss the case, volunteered to the bailiff that he was "pretty sure the Defendant is guilty." While M.J. did not express an unequivocal opinion that Anderson was guilty, when asked by the State whether he had already formed an opinion of Anderson's guilt, M.J. said, "I have a leaning." When asked to clarify what he meant, M.J. reaffirmed *1140 his opinion and explained that it was based on what questions Defense counsel asked during voir dire. M.J. admitted being unsure whether he would "be able to push those sort of things all the way to the side." When the State asked if he could follow the jury instructions and suspend his decision until the end of trial, M.J. only offered that he would "100 percent try," but added the disconcerting caveat that "life moves forward and there's certain things from my past, that all of our lives that we can't not remove [sic]." When Defense counsel asked M.J. whether he would be troubled by Anderson's decision not to testify, M.J. responded, "Uh that's one of the things. The, the belief that, that an innocent man has nothing to hide prevails slightly above-the idea of uh being accidentally trapped by a trick question from, from the other side and counsel." When asked if he could "give Mr. Anderson a fair shot" M.J. reiterated his commitment to "100 percent try" but again qualified his response, explaining, "[i]t's very hard without hearing everything ahead of time.... I believe I could. I do believe that. There just is a slight bit of preconception stepping in, forward now. And that's, that's why I told the Bailiff why, what I wanted you to be aware of."
¶20 Our review of the record, based on a totality of circumstances, reveals a troubling pattern that should have resulted in M.J.'s removal. M.J.'s statements raised serious questions regarding his ability to be a fair and impartial juror. Unlike the jurors in Jay , Falls Down , and Champagne , M.J. did not relinquish his opinion of Anderson's guilt during substantial chambers questioning, but instead, reaffirmed this leaning or tacitly resisted recanting it several times. Considered together, M.J.'s statements are closer to the disqualifying answers given by the jurors in DeVore and Johnson . M.J.'s answers called into ***10 question whether he could serve as a juror "with entire impartiality and without prejudice" toward Anderson. Section 46-16-115(2)(j), MCA. While the State focuses on M.J.'s assurance, at the end of the court's chamber questioning, that he could "absolutely keep an open mind," we conclude that M.J.'s multiple, spontaneous answers to previous questions were "most likely to be reliable and honest" indicators of his state of mind. Jay , ¶ 19 (internal quotations and citations omitted); see also DeVore , ¶ 28.
¶21 Therefore, we conclude the District Court abused its discretion in denying Anderson's motion to dismiss M.J. for cause. The error is structural in nature, requiring reversal. Swan v. State , 2006 MT 39, ¶ 19, 331 Mont. 188, 130 P.3d 606 (citing State v. Van Kirk , 2001 MT 184, ¶¶ 38-39, 306 Mont. 215, 32 P.3d 735 ).[3]
¶22 Reversed and remanded.
We concur:
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.
BETH BAKER, J.

Both parties argue that Defense counsel's move to strike juror M.J. was a challenge for cause. Anderson notes this case "is an oddity because the Defendant exhausted his preemptory challenges before the juror's bias was apparent and he was challenged for cause." Section 46-16-117, MCA, provides: "All challenges must be interposed before the jury is sworn unless the cause of challenge is discovered after the jury is sworn and before the introduction of any evidence, in which case the court, in its discretion, may allow the challenge to be interposed." The jury had not yet been empaneled or sworn when M.J. made the comments to the bailiff and when Anderson challenged M.J.'s fitness as a juror.

As we have recognized, "Our cases manifest that it is not uncommon for prospective jurors to come to court with preconceived biases and fixed opinions about a defendant's guilt; information about the case obtained prior to trial; what the law is, requires, or should require; or the veracity of a victim, witness, or type of victim or witness." Johnson , ¶ 10.

Anderson raises other arguments that we decline to analyze in light of our decision to reverse his conviction. However, for purposes of possible retrial, it is appropriate to note an instructional issue raised by Anderson. State v. Berosik , 2009 MT 260, ¶ 3, 352 Mont. 16, 214 P.3d 776. Anderson was charged with committing burglary in violation of § 45-6-204(1)(b), MCA, which includes two mental state requirements. A person commits burglary if (1) he "knowingly enters or remains unlawfully in an occupied structure"; and (2) "knowingly or purposely commits any other offense within that structure." The burglary statute and the state's model jury instruction for the statute enumerate this two-part mental state requirement. Here, the District Court's instruction on the elements of the offense of burglary provided a singular mental state: "To convict the Defendant of the charge of burglary, the State must prove the following elements: 1. That the Defendant knowingly entered or remained unlawfully in an occupied structure; AND 2. That the Defendant committed the offense of sexual intercourse without consent therein." Although we make no ruling on the parties' arguments related to the interpretation and applicability of State v. Gerstner , 2009 MT 303, 353 Mont. 86, 219 P.3d 866, to this issue, the District Court could provide additional clarity to its burglary jury instruction if the case is retried.