Justice Dirk Sandefur delivered the Opinion of the Court.
***171 ¶1 Defendant Todd Michael Johnson appeals his judgment of conviction on jury verdict in the Montana Thirteenth Judicial District Court, Yellowstone County, on the offense of partner or family member assault (PFMA), a felony. We address the following dispositive issue on appeal:
Whether the District Court abused its discretion in denying Johnson's motion to excuse a prospective juror for cause?
¶2 We reverse and remand for a new trial.
BACKGROUND
¶3 Based on an alleged assault on May 29, 2014, the State of Montana charged Johnson with PFMA, a felony in violation of § 45-5-206(1)(a), MCA. During jury voir dire on the morning of trial, defense counsel informed the venire that a central fact dispute in the case would be whether Johnson was a "partner" as alleged by the State as an essential element of proof of PFMA. Counsel thus inquired of three prospective jurors whether they could vote "not guilty" if the State proved that Johnson assaulted the alleged victim but was unable to prove that she was his "partner." All three generally responded that they could and would require the State to prove each essential element of the charged PFMA beyond a reasonable doubt.
¶4 However, the following colloquy later took place between defense counsel and prospective Juror S.:
***172 Prospective Juror: So you're telling me that ... the State has to prove that she is a partner and that he beat her up. If they can't prove that she's a partner or a girlfriend, is that what we're talking about? If they don't prove beyond a reasonable doubt, say, maybe they're just acquaintances, she isn't a partner, *149 they haven't had a relationship, then it's okay that he beat her up?
Defense counsel: No, I'm not saying that it's okay.
...
What I'm asking you is, what if that was the case?
Prospective Juror: If that was the case, I would have a hard time. Because if he truly beat her up, it makes no difference to me whether they were an acquaintance or they were-had a relationship.
Defense counsel: Okay. Even if he's not charged with that? Even if you're-
Prospective Juror: I personally would probably have a problem with that.
Defense counsel: So you would find him guilty because he's a bad man, not because he did what they say he did?
Prospective Juror: Yes.
Defense counsel later returned to prospective Juror S. and further inquired whether her work with assault victims at a local hospital would bias her against Johnson. After answering to the contrary and further opining that she thought her work experience would actually make her a better juror because she would not be shocked by photographs of gruesome injuries, prospective Juror S. spontaneously reiterated her previously stated problem with requiring the State to prove that the alleged victim was the Defendant's "partner," to wit:
Defense counsel: You think you'd be better as a juror with your background?
Prospective Juror: Probably. But I do have a problem with the partner aspect of it all.
Prospective Juror S. later unequivocally stated her problem yet a third time when generally asked by defense counsel if she could be fair and objective:
No, I don't know. I have a real problem with, if he beat the girl up, it makes no difference to me. I didn't realize ... there was such a thing as [PFMA]-that distinction. That would be a problem for me. If he beat her up, I think he should be punished, whether she was a partner or an acquaintance. ... And I would have a hard time with my decision. I would try to not let that affect me, but I just truthfully think it would.
***173 ¶5 Defense counsel then challenged prospective Juror S. for cause. After the State sought and obtained leave to further voir dire her prior to the court's ruling, the following colloquy ensued:
Prosecutor: Ms. [S.], you've given answers that it would be difficult for you. Would it be impossible for you to?
Defense counsel: I'd object. I don't think impossibility is the standard.
District Court: Yeah.
Prosecutor: ... I'll withdraw it-
District Court: Okay.
Prosecutor: -and go a different route. Difficulty notwithstanding, have you had to make decisions that were difficult for you?
Prospective Juror: Yes.
Prosecutor: Are you willing to set aside your-any difficulty that you have if the Judge orders you to follow the instruction that the State must prove all elements of the crime?
Prospective Juror: Say it again, please.
Prosecutor: If the Judge orders you to follow the jury instructions, will you follow the jury instructions?
Prospective Juror: Yes.
Prosecutor: And if the jury instructions include that the State must prove that the victim was a partner, will you follow that instruction even if that is difficult for you?
Prospective Juror: Yes.
The District Court thus summarily denied Johnson's challenge of prospective Juror S. for cause. Johnson then used his first peremptory challenge to strike Juror S. from the panel and subsequently exhausted all of his remaining peremptory challenges.
¶6 At the close of trial, the jury returned a verdict of guilty. At the subsequent sentencing hearing, the District Court sentenced Johnson as a persistent felony offender to a 20-year term of commitment to the Montana State Prison, consecutive to his sentence in a *150 parallel-pending case independently appealed to this Court. Johnson timely appeals.
STANDARD OF REVIEW
¶7 We review district court denials of challenges of prospective jurors for cause for an abuse of discretion. State v. Russell , 2018 MT 26, ¶ 10, 390 Mont. 253, 411 P.3d 1260 (citing State v. Richeson , 2004 MT 113, ¶ 14, 321 Mont. 126, 89 P.3d 958 ). If the defendant subsequently used a peremptory challenge to strike the prospective juror and ultimately exhausted all afforded peremptory challenges, the erroneous ***174 denial of a challenge of a prospective juror for cause is a structural error requiring automatic reversal. State v. Good , 2002 MT 59, ¶¶ 62-65, 309 Mont. 113, 43 P.3d 948.
DISCUSSION
¶8 Whether the District Court abused its discretion in denying Johnson's motion to excuse a prospective juror for cause?
¶9 Criminal defendants have fundamental federal and state constitutional rights to an impartial jury. U.S. Const. amend. VI ; Mont. Const. art. II, § 24 ; State v. Russell , 2018 MT 26, ¶ 12, 390 Mont. 253, 411 P.3d 1260 ; State v. Allen , 2010 MT 214, ¶ 25, 357 Mont. 495, 241 P.3d 1045 ; State v. Hausauer , 2006 MT 336, ¶ 20, 335 Mont. 137, 149 P.3d 895. A defendant may accordingly challenge a prospective juror for cause if the juror manifests "a state of mind" regarding the case or either party "that would prevent the juror from acting with entire impartiality" regarding the parties and material matters in the case. Section 46-16-115(2)(j), MCA.[1]
¶10 Our cases manifest that it is not uncommon for prospective jurors to come to court with preconceived biases and fixed opinions about a defendant's guilt; information about the case obtained prior to trial; what the law is, requires, or should require; or the veracity of a victim, witness, or type of victim or witness. See , e.g. , State v. Johnson , 2014 MT 11, ¶¶ 14-20, 373 Mont. 330, 317 P.3d 164 (bias in favor of law enforcement); Allen , ¶¶ 26-30 (preconceived opinion of guilt based on law enforcement bias and pretrial publicity); State v. Braunreiter , 2008 MT 197, ¶¶ 12-17, 344 Mont. 59, 185 P.3d 1024 (inability to follow law-belief that defendant must prove innocence); State v. Falls Down , 2003 MT 300, ¶¶ 24-36, 318 Mont. 219, 79 P.3d 797 (preconceived opinion of guilt based on pretrial publicity). It is similarly common for prospective jurors to have experiences common or similar to matters or persons at issue in a criminal case. See , e.g. , Russell , ¶¶ 13-19 (DUI-related death and injury of family members and resulting discomfort in sitting on that type of case); State v. Normandy , 2008 MT 437, ¶¶ 23-25, 347 Mont. 505, 198 P.3d 834 (initial concern about ability to be fair based on disdain for domestic violence and how it adversely affected juror's wife in her first marriage); State v. Rogers , 2007 MT 227, ¶¶ 25-26, 339 Mont. 132, 168 P.3d 669 (initial statement of disdain for child molesters and inability to be objective);
***175 State v. Heath , 2004 MT 58, ¶¶ 25-36, 320 Mont. 211, 89 P.3d 947 (prior experience as stalking victim, work as rape survivor advocate, and resulting discomfort in sitting on sex case). Likewise, it is not uncommon for prospective jurors to have specialized or extraordinary knowledge or interest in similar crimes, investigative procedures, types of offenders, or associations with law enforcement entities. See , e.g. , Heath , ¶¶ 32, 37-42 (familiarity with rape kits, specialized education and interest in working with sex offenders, and prior juvenile detention center employment). For those reasons and more, it is common for prospective jurors to initially express doubt or concern about their ability to be fair and impartial. See , e.g. , Russell , ¶¶ 14-19 ; Normandy , ¶¶ 23-25.
¶11 In any event, the dispositive question is not whether a prospective juror has: (1) expressed a bias or fixed opinion of fact or law pertinent to a case; (2) a common or similar experience or connection that would or could give rise to such bias or fixed opinion; (3) specialized or extraordinary knowledge or interest in a matter pertinent *151 to a case; or (4) expressed doubt or concern about the juror's ability to be fair and impartial. The dispositive question is whether the totality of the juror's statements and referenced circumstances raise a serious question or doubt about his or her willingness or ability to set aside any such matter to fairly and impartially render a verdict based solely on the evidence presented and instructions given. Russell , ¶¶ 14-19 ; Johnson , ¶¶ 14-20 ; Allen , ¶¶ 26-30 ; Normandy , ¶¶ 23-25 ; Braunreiter , ¶¶ 12-25 ; Rogers , ¶¶ 25-26 ; Heath , ¶¶ 25-42 ; Falls Down , ¶¶ 24-36. Thus, upon a challenge for cause, the court must determine whether a serious question exists about a prospective juror's ability to be fair and impartial based on the totality of the juror's statements and referenced circumstances. Russell , ¶ 14. The court must resolve any doubt or ambiguity about a juror's ability to be fair and impartial in favor of disqualification. Braunreiter , ¶ 10. In contrast to single-syllable answers prompted by leading questions, spontaneous and unprompted responses to open-ended questions are generally the most truthful, accurate, and reliable indicators of bias and the ability to be fair and impartial. Russell , ¶ 14 ; Allen , ¶¶ 26-28.
¶12 If a prospective juror makes a suspect statement, counsel or the court may properly ask open-ended questions to further investigate, clarify, or confirm whether a serious question exists about the juror's bias or ability to be fair and impartial. Allen , ¶ 26 ; Heath , ¶ 29. However, if a prospective juror's earlier unprompted responses to open-ended questions manifest a serious question about his or her ability to be fair and impartial, it is improper for counsel or the court ***176 to attempt to rehabilitate the juror through the use of leading or loaded questions, such as whether the juror will follow the law, jury instructions, or an order of the court. Russell , ¶ 15 ; Allen , ¶¶ 26-28. Recantations coaxed by such questions are inherently unreliable because they put ordinary citizens, who are already in "an unfamiliar and imposing courtroom" setting under scrutiny of the judge, peers, lawyers, and the community, in the untenable position of having to publicly disagree with the court or counsel on generally accepted legal principles in order to reiterate an earlier spontaneous statement of bias. State v. Brown , 1999 MT 339, ¶ 27, 297 Mont. 427, 993 P.2d 672 (Nelson, J., specially concurring). See also Allen , ¶¶ 26-28 ; Braunreiter , ¶¶ 9-11 ; Good , ¶ 54 ; Coaxed recantations thus "do not cure or erase a clearly stated" or indicated prejudicial bias. Heath , ¶ 26 (citing State v. Freshment , 2002 MT 61, ¶ 18, 309 Mont. 154, 43 P.3d 968 ). We again strongly caution that coaxed recantations are improper and are "merely fodder for appeal" at "major expense and inconvenience" to all. State v. DeVore , 1998 MT 340, ¶ 28, 292 Mont. 325, 972 P.2d 816, overruled on other grounds by Good , ¶ 63. Accord Braunreiter , ¶ 11.
¶13 This is not a case where a prospective juror merely had an experience in common with, or similar to, the experience of the accused or victim at issue. Nor is this a case where a prospective juror merely expressed concern about her ability to be fair and impartial but ultimately believed that she could and pledged to try.
¶14 This is a far more troubling case where a prospective juror twice spontaneously asserted emphatically that she would have a "hard time" and a personal "problem" with requiring the State to prove an essential element of the charged offense (i.e., that the alleged victim was a legally-defined "partner" of the Defendant).[2] On a third occasion, she emphasized that she had "a real problem" with it. She twice stated emphatically that "it makes no difference to me"-if the defendant "beat her up," then "he should be punished" regardless of whether the victim was his partner or merely an acquaintance. In her final spontaneous statement, the prospective juror candidly stated that she "would try to not let" her desire for punishment of all assaults "affect" her, "but I just truthfully think it would."
¶15 For whatever reason, the State chose to charge Johnson with PFMA rather than assault. Proof beyond a reasonable doubt *152 that the alleged victim was a "partner" of the accused, as defined by ***177 § 45-5-206(2)(b), MCA, was an essential element of the State's burden of proof of the charged offense of PFMA. See §§ 26-1-403(2), 45-5-206(2)(b), MCA. The prospective juror's multiple spontaneous statements were consistent, clear, unequivocal, and emphatic-she would likely be unable or unwilling to set her personal view and bias aside and vote for acquittal if the State proved that Johnson assaulted the alleged victim but was unable to prove that she was his "partner." The record clearly and unequivocally manifests that the prospective juror would likely be unable or unwilling to follow the court's jury instructions due to her strongly-held personal bias that, if he assaulted the alleged victim, Johnson should be punished regardless of whether the victim was his "partner" or not.
¶16 When faced with the prospective juror's unequivocal bias, whether because it would have been futile or for another reason, the State made no attempt to use open-ended questions to allow the prospective juror to clarify or allay the obvious problem with her patently biased responses. Rather, precisely as we have repeatedly warned against, the State followed up with a series of leading and loaded questions which squarely put the prospective juror in the position of either having to acquiesce to those questions or state her intent to defy the court and the law. Not too surprisingly, the juror acquiesced. In coaxed, single-syllable answers, she answered "yes," she would follow the court's order and jury instructions. This is a clear, if not quintessential, case of a prospective juror clearly and unequivocally manifesting a serious question as to whether she could be fair and impartial, followed by a recantation improperly coaxed by leading and loaded questions that would otherwise have required the juror to defy the court and the law. We hold that that the District Court abused its discretion in denying Johnson's motion to disqualify prospective Juror S. for cause. Pursuant to Good , ¶¶ 62-65, we hold further that the error was structural, requiring automatic reversal, because the Defendant later used a peremptory challenge to strike Juror S. from the panel and ultimately exhausted all of his peremptory challenges.
CONCLUSION
¶17 We hold that that the District Court abused its discretion in denying Johnson's motion to disqualify prospective Juror S. for cause. Under the circumstances of this case, the error was structural, requiring automatic reversal.
¶18 Reversed and remanded for a new trial.
We concur:
JIM RICE, J.
INGRID GUSTAFSON, J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.

See also § 46-16-115(2)(a)-(i), MCA (enumerating various other grounds of disqualification for cause).

When defense counsel followed with the leading question, "[s]o you would find him guilty because he's a bad man [rather than] because he did what they say he did[,]" the prospective juror answered with an unequivocal "yes."