

FILED

07/06/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0384

DA 20-0384

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 166N

MICHAEL GILBERT ILK,

      Petitioner and Appellant,

    v.

STATE OF MONTANA,

      Respondent and Appellee.

FILED

JUL 0 6 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV-19-209
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Joseph P. Howard, Joseph P. Howard, P.C., Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Marcia Jean Boris, Lincoln County Attorney, Jeffrey Steven Zwang,
Deputy County Attorney, Libby, Montana

Submitted on Briefs:  May 5, 2021

Decided:  July 6, 2021

Filed:

_____
               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Michael Gilbert Ilk appeals from the District Court's denial of his petition for postconviction relief, in which he claims ineffective assistance by his trial counsel. Ilk was convicted of two counts of Attempted Deliberate Homicide and two counts of Aggravated Assault for his role in shooting his former girlfriend and her companion by discharging a firearm multiple times into the vehicle they occupied. A complete explanation of the incident giving rise to the charges is provided in *State v. Ilk*, 2018 MT 186, 392 Mont. 201, 422 P.3d 1219.

¶3    At trial in 2016, Ilk's defense attorney, Sean Hinchey, questioned prospective jurors during voir dire: "[y]ou might hear in the course of this case some allegations of physical assault or physical abuse. I'm going to ask some questions about that. Has anyone here been around folks, people you believe may have been physically abused?" The following exchange between Hinchey and Juror James Brown forms the basis of Ilk's postconviction claim of ineffective assistance of counsel against Hinchey:

MR. HINCHEY: . . . Mr. Brown, I think you might have had your hand up. Thank you.

MR. BROWN: Yeah, you asked if a person had been abused?

2

MR. HINCHEY: Yes.

MR. BROWN: Yeah, my wife come [sic] from a very abusive marriage, not with me, of course. She's been at bliss with me.

MR. HINCHEY: You are the silver lining out of all of that.

MR. BROWN: Yeah, but I mean she was, her ex would come in drunk and beat her and knock her teeth out, kicked her in the belly when she was pregnant, lost her kid, tried to molest her two daughters. It was a bad situation.

MR. HINCHEY: Oh my goodness.

MR. BROWN: Yeah, I was going to kill the SOB, but uh, he would only mess with me one time and that was over the phone and I never seen him since – never seen him. But, yeah, I am very prejudiced against people that abuse other people, whether they are male or female and they should be took out and shot as far as I am concerned.

MR. HINCHEY: Okay. So you wouldn't have any trouble doing that? Defending...

[Mr. Brown interrupts.]

MR. BROWN: I don't think I'd have any problem pulling the trigger on somebody like that to tell you the damn truth about it.

MR. HINCHEY: That's what I am asking.

MR. BROWN: Okay, that's the truth.

MR. HINCHEY: Thank you.

MR. BROWN: Okay.

Hinchey further questioned the jurors on justifiable use of force, "split second decision making," and their ability to be impartial in Ilk's case. Hinchey utilized all his peremptory challenges, but did not strike Brown. During the trial, Ilk claimed he had acted in self-defense that justified his use of a firearm under the circumstances. The jury found Ilk

3

guilty on four charges and, on appeal in 2018, this Court affirmed the judgment. *Ilk*, ¶¶ 1, 40.

¶4    In October 2019, Ilk petitioned the District Court for postconviction relief, alleging "violation[s] of his rights under the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution" because trial counsel ineffectively failed to "ensure Ilk's right to a fair trial by a panel of impartial jurors" and "properly investigate a prospective juror's averred prejudice and state of mind regarding perpetrators of domestic violence."

¶5    The District Court held a hearing, at which Hinchey and Ilk testified. Hinchey acknowledged that Juror Brown "expressed that he was very prejudiced against people that abuse other people," but that he was looking for jurors through a "different lens" and "in the context of my theory of the case," explaining that Brown had not expressed any bias toward Ilk, and that:

> MR. HINCHEY: . . . Mr. Brown clearly indicated to me that he was a gun owner. He was comfortable with firearms and would be comfortable using them in an appropriate situation. And that is what I needed was jurors that were comfortable with those facts because those are the facts I was dealing with. I had a defendant who was accused of attempted deliberate homicide and our theory of the case was self-defense, because there was really no question that Mr. Ilk fired his weapon six times in the direction of the vehicle of Ms. Pereslete and Mr. Wilson. And our theory relied less about prior domestic violence allegations and more about the fact that she was manipulating him, and that those allegations in large part were not true, and that she was creating this situation. So on that day of April 15th Mr. Ilk had to be the victim of that offense for us to be successful at trial.

¶6    The District Court denied Ilk's petition, reasoning:

> At the criminal trial, Petitioner presented a justifiable use of force defense. He admitted the elements of the offense but argued his actions were justified

4

self-defense. Petitioner presented evidence attempting to show the relationship with one of the victims was mischaracterized and lasted longer than the victim claimed. Petitioner introduced text messages showing that victim asked the other victim to bring a gun to the meeting that precipitated the shooting. The defense portrayed that victim as a manipulative younger woman who was leading on Petitioner, taking advantage of him, luring him to the scene, where she engineered the confrontation that was the subject of the criminal trial.

Reviewing the totality of Juror Brown's statements during voir dire, including follow-up questions to Juror Brown and the entire panel, the court cannot find Mr. Hinchey's conduct fell "outside the wide range of reasonable professional assistance" in light of the circumstances at the time of trial.

¶7 Ilk appeals, challenging the District Court's conclusion that he did not receive ineffective assistance of counsel.

¶8 Because ineffective assistance of counsel claims are mixed questions of law and fact, we review such claims de novo. We determine whether factual findings are clearly erroneous, and conclusions of law are correct. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861 (citing *Hartinger v. State*, 2007 MT 141, ¶ 19, 337 Mont. 432, 162 P.3d 95 and *State v. Racz*, 2007 MT 244, ¶ 13, 339 Mont. 218, 168 P.3d 685).

¶9 Ilk argues that Hinchey's trial performance was not "objectively reasonable" because Hinchey did not further question, use a peremptory challenge, or challenge Juror Brown for cause after Brown displayed actual prejudice "against people that abuse other people." The State answers that Ilk's claim is merely a "speculative theory that another attorney would have viewed things differently during jury selection," and that Hinchey made an "informed, strategic decision to leave Juror Brown on the jury because . . . he believed Juror Brown would be receptive to Ilk's defense of justifiable use of force."

¶10 The Sixth and Fourteenth Amendments to the United States Constitution and Article II, section 24 of the Montana Constitution guarantee the accused a right to counsel. *Whitlow*, ¶ 10. "Defense counsel has a duty to ensure a defendant's right to a fair trial by a panel of impartial jurors." *Whitlow*, ¶ 29 (citing *State v. Lamere*, 2005 MT 118, ¶ 15, 327 Mont. 115, 112 P.3d 1005). Disqualification of a juror based upon the juror's alleged prejudice is necessary "where jurors form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court." *Whitlow*, ¶ 30 (citing *State v. Freshment*, 2002 MT 61, ¶ 12, 309 Mont. 154, 43 P.3d 968); *see also State v. Johnson*, 2019 MT 68, ¶ 11, 395 Mont. 169, 437 P.3d 147.

¶11 "[T]he performance of criminal defense counsel is constitutionally ineffective only if both deficient and prejudicial." *State v. Pelletier*, 2020 MT 249, ¶ 38, 401 Mont. 454, 473 P.3d 991 (citing *State v. Herrman*, 2003 MT 149, ¶ 17, 316 Mont. 198, 70 P.3d 738); *accord Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). A petitioner must show that counsel's conduct "fell below an objective standard of reasonableness measured by prevailing professional norms under the totality of the circumstances at issue" and "but for the deficient performance" there is a "reasonable probability that the outcome would have been different." *Pelletier*, ¶ 38 (citations, brackets, and quotations omitted). If the petitioner fails to make a showing under either the performance or prejudice prong, the ineffective assistance of counsel claim fails as a matter of law. *Whitlow*, ¶ 11 (citing *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601 and *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069).

6

¶12 We are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Whitlow*, ¶ 21 (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065); *see also State v. Hamilton*, 2007 MT 223, ¶ 16, 339 Mont. 92, 167 P.3d 906 (stating that "[t]here is a strong presumption with regard to the first prong of the *Strickland* test that trial counsel's performance was based on sound trial strategy and falls within the broad range of reasonable professional conduct.").

¶13 In *State v. Normandy*, we determined under similar circumstances that a juror whose wife was a victim of domestic violence in her first marriage was "biased against the crime, not the defendant," which did not require disqualification because the juror was "unequivocal in his assertion that he could be fair in assessing whether the defendant was guilty of the charged offense." *Normandy*, 2008 MT 437, ¶ 25, 347 Mont. 505, 198 P.3d 834. In contrast, we held that disqualification of the juror was required in *State v. Golie*, 2006 MT 91, ¶¶ 11-12, 332 Mont. 69, 134 P.3d 95, because the juror repeatedly asserted that he would not want himself as a juror if he was on trial because the trial's subject matter was a "sore subject" from personal experience. *Normandy*, ¶ 25. Here, Brown did not hold a fixed opinion regarding Ilk's guilt or innocence, but rather, like the juror in *Normandy*, was biased against abusive people generally, regardless of "whether they are male or female"; in other words, "biased against the crime, not the defendant." *Normandy*, ¶ 25. And, unlike the juror in *Golie*, the record here indicates Brown affirmed his ability to put his personal convictions aside to assess the evidence and render judgment impartially.

7

¶14 As the District Court reasoned, Hinchey believed that Brown would be sympathetic to Ilk's case. Hinchey sought jurors who were comfortable with gun ownership and individuals making "split second decisions" in exercising justifiable use of force to protect themselves. This was a reasonable strategy consistent with Hinchey's theory of the case, which acknowledged the shooting evidence but sought to justify it. Hinchey attempted to paint Ilk as a victim being directly manipulated by his former girlfriend, and offered evidence at trial in support of this theory. Thus, we conclude the District Court did not err by concluding that Ilk did not overcome the presumption that Hinchey's actions fell "within the wide range of reasonable professional assistance." *Whitlow*, ¶ 21.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16 Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices