FILED

03/03/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0324

DA 23-0324

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 40

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RICHARD JAMES HAACKE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 22-132
Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy A. Hinderman, Appellate Defender Division Administrator,
Gregory Hood, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Bill Fulbright, Ravalli County Attorney, Amanda Smith, Deputy County
Attorney, Hamilton, Montana

                    Submitted on Briefs:  October 29, 2025

                              Decided:  March 3, 2026

Filed:

                    _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Richard James Haacke (Haacke) appeals from his conviction in the Twenty-First Judicial District Court, Ravalli County, of criminal possession of dangerous drugs, a felony in violation of § 45-9-102, MCA, and possession of drug paraphernalia, a misdemeanor in violation of § 45-10-103, MCA.  We consider:

> *Did the District Court abuse its discretion by denying Haacke's motion to strike juror M.W. for cause?*

¶2     We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On June 30, 2022, Haacke's vehicle was stopped when police matched its description with a vehicle involved in a trespass and burglary the night before.  The stop led to an investigation and the filing of drug charges against Haacke, on which he proceeded to a jury trial.

¶4     During voir dire, defense counsel explained to the venire that the State alone bears the burden of proof and the defendant has no obligation to present evidence.  Defense counsel eventually asked: "Is there anyone who thinks that they would have an issue finding Mr. Haacke not guilty if we put on no evidence whatsoever?" to which prospective juror D.C. answered, "I definitely would," and the following conversation occurred:

DEFENSE COUNSEL:  You definitely would.  Can you tell me about that?

D.C.:  If the evidence is presented that wrong was done and he won't rebut it, there's something wrong with that.  That's an admission of guilt, to me.

PROSECUTOR:  So your theory is if he doesn't put on evidence, he is guilty, regardless of what the State puts on?

2

D.C.: No, not regardless of what the State puts on; regardless of what the facts are about what the State says.

DEFENSE COUNSEL: Do you think that there's any way you could impartially decide a case if the Defense didn't put on any evidence?

D.C.: Definitely. There's no way that I would stand up and say that that's right. We have an opportunity to speak our mind, to present what we know, how it happened to us; and if we don't do that, to me, that's an admission of guilt.

DEFENSE COUNSEL: Okay. Your Honor, I'm going to -- and, again, this is nothing personal against you -- but I'm going to move to strike [D.C.] for cause, Your Honor.

PROSECUTOR: No objection.

DISTRICT COURT: Thank you, [D.C.], you are excused.

¶5 Defense counsel continued to question the venire, leading to for-cause challenges of other prospective jurors based upon personal experiences that could make it difficult for them to serve, which the District Court granted. Defense counsel then discussed the meaning of reasonable doubt, leading to the following exchange with a prospective juror:

DEFENSE COUNSEL: And to shift real quickly, what about reasonable doubt, do you feel like you understand what that means?

PROSPECTIVE JUROR: Uh-huh.

DEFENSE COUNSEL: Can you tell me a little about that?

PROSPECTIVE JUROR: Listening to what is presented, whatever happened, listening to both sides, so I can have a good feeling about what happened, what's going on.

DEFENSE COUNSEL: And again, when you said "both sides," the Defense is technically not obligated to put on any evidence whatsoever. So if you

3

only hear from the State, are you going to be inclined to believe, well, he didn't say anything; therefore, he must be guilty?

PROSPECTIVE JUROR: I don't think so.

¶6    Defense counsel then had the following exchange with prospective juror M.W.:

DEFENSE COUNSEL:  All right.  So that was a lot right here.  I'm going to try to ask some more questions of you all.  Any of the conversations that we just had bring anything up for anybody over here on this front row?  Yes, sir.

M.W.:  I just -- am not trying to get kicked out, because I think I can sit and be fair and objective about it, but I do agree with the gentleman over there that there's only one person in this room who knows beyond any doubt what exactly happened; and if we don't hear a rebuttal of some form, and we get some solid evidence presented by the State, it's very difficult to be looking at an acquittal with that sort of response in that situation.  I think it's critical that you present rebuttal to the evidence that's been presented.  If the evidence presented by the State is very marginal, certainly, I think it'd be easy to step back and say, Okay, this is where we are.  And that's where the weight of the evidence and whatever the evidence consists of, but I do think there is an issue that the evidence needs to be rebutted by the Defendant to make it valid.

PROSPECTIVE JUROR:[1]  I agree.  There has to be something on both sides of the scale to achieve a balance.

DEFENSE COUNSEL:  Okay.  So, it sounds like if -- and I'm not saying this is going to be the case, but if Mr. Haacke opts not to testify, you would have a hard time relying solely on what the State said to determine whether or not he might be not guilty?

M.W.:  It would bother me a bit.  But, again, I also have some not direct on-the-street experience, but certainly a significant amount of experience, so I believe I could step back and say, What they are presenting really doesn't put the lid on this; and in that case, he is innocent until proven guilty and I don't think that's been done, so…

DEFENSE COUNSEL:  So you think -- again, I don't want to put words in your mouth.  But I think you might be able to find him not guilty without

---

[1] The prospective juror noted here is a different venire member than M.W., and only briefly interjected into the conversation.

evidence presented on his behalf, but it sounds like you would strongly prefer him to take the stand.

M.W.: I would. I think I could if the evidence was not very strong. But if there's fairly strong evidence, I would like to hear how that evidence came forward and what the story is that created that. And like I said, there's only one person here who really knows what the true story is.

DEFENSE COUNSEL: Sure. Do you think -- and, again, I'm sorry to kind of beat a dead horse -- but if you wouldn't be able to overcome that, if the Defense didn't put on their own evidence?

M.W.: Again, it depends on what the evidence is presented by the State, you know. Because I think I can step back and say that that's pretty circumstantial or that's kind of questionable and so on; and given that, and given our promise that he was innocent until proven guilty, I would say he was not proven guilty and I could find him not guilty in that case.

DEFENSE COUNSEL: So it's going to depend on the evidence for you?

M.W.: Absolutely. Absolutely.

DEFENSE COUNSEL: But, again, you would prefer to see something from the Defense?

M.W.: Absolutely.

DEFENSE COUNSEL: So with that case, Your Honor, I would move to strike for cause.

PROSECUTOR: Your Honor, I would object. I think that the potential juror has expressed that he is capable and willing and wants to look at evidence presented and weighed, and he has expressed that he can weigh that fairly, so I think it's legitimate to keep him in the pool.

DISTRICT COURT: I agree. The motion is denied.

¶7 Haacke used a peremptory challenge to remove M.W. from the venire. The jury returned a guilty verdict on the charges, and the District Court sentenced Haacke to suspended sentences, to run concurrently. Haacke appeals.

## STANDARD OF REVIEW

¶8 "We review a district court's denial of a challenge to remove a prospective juror for cause for an abuse of discretion." *State v. Anderson*, 2019 MT 190, ¶ 11, 397 Mont. 1, 446 P.3d 1134 (citing *State v. Cudd*, 2014 MT 140, ¶ 6, 375 Mont. 215, 326 P.3d 417). "A district court abuses its discretion if it denies a challenge for cause when a juror's statements raise serious doubts about the juror's ability to be fair and impartial or actual bias is discovered." *State v. Ghostbear*, 2020 MT 60, ¶ 8, 399 Mont. 208, 459 P.3d 1285 (citing *Anderson*, ¶ 11).

## DISCUSSION

¶9 *Did the District Court abuse its discretion by denying Haacke's motion to strike juror M.W. for cause?*

¶10 Haacke argues that the District Court erred by denying his motion to strike juror M.W. for cause, because "[a]lthough [M.W.] said he could be 'fair and objective,' his unsolicited, spontaneous comments demonstrated otherwise." Haacke argues that M.W.'s position that Haacke would have to offer a rebuttal if the State put on a strong case "demonstrated a serious question about his ability to act with impartiality and to afford Mr. Haacke the presumption of innocence to which he was entitled," and that the District Court should have excused M.W. pursuant to § 46-16-115(2)(j), MCA (a juror "having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party[]"). The State answers that the District Court acted within its discretion to deny Haacke's motions to strike M.W. because M.W. believed he could be fair and objective

6

and would uphold both the presumption of innocence and the State's burden to prove its case. While M.W. said he "would like to hear" Haacke's side of the story, he also said he could acquit Haacke if the State did not prove its case, and this does not constitute bias. It notes that M.W.'s answers were based on hypotheticals of what the evidence might be, and, to the extent M.W. expressed a preference for a rebuttal from Haacke, "that preference was teased out by leading questions from defense counsel, and [M.W.] never stated he would hold it against Haacke if he did not testify."

¶11 Criminal defendants have a fundamental right under both federal and state constitutions to be tried by an impartial jury. U.S. Const. amend. VI; Mont. Const. art. II, § 24; *State v. Johnson*, 2019 MT 68, ¶ 9, 395 Mont. 169, 437 P.3d 147. Likewise, a defendant's constitutional right to remain silent and the State's burden to prove guilt beyond a reasonable doubt are foundational principles. U.S. Const. amend. V; Mont. Const. art. II, § 25; *Sandstrom v. Montana*, 442 U.S. 510, 520-24, 99 S. Ct. 2450, 2457-59 (1979) (the Due Process Clause requires proof beyond a reasonable doubt of every element of the charged offense); *State v. Laird*, 2019 MT 198, ¶ 59, 397 Mont. 29, 447 P.3d 416 ("A fundamental principle of the criminal justice system is that the State must prove each element of a crime beyond a reasonable doubt."). To safeguard these rights, a potential juror's service may be challenged for cause. Section 46-16-115(1), MCA ("Each party may challenge a juror for cause, and each challenge must be tried by the court."); *Anderson*, ¶ 14 (citations omitted). "A challenge under § 46-16-115(2)(j), MCA must be determined

pursuant to both the statutory language and the totality of the circumstances presented."

*State v. Golie*, 2006 MT 91, ¶ 8, 332 Mont. 69, 134 P.3d 95 (citation omitted).

¶12    As stated in *Johnson*:

> [T]he dispositive question is not whether a prospective juror has: (1) expressed a bias or fixed opinion of fact or law pertinent to a case; (2) a common or similar experience or connection that would or could give rise to such bias or fixed opinion; (3) specialized or extraordinary knowledge or interest in a matter pertinent to a case; or (4) expressed doubt or concern about the juror's ability to be fair and impartial. The dispositive question is whether the totality of the juror's statements and referenced circumstances raise a serious question or doubt about his or her willingness or ability to set aside any such matter to fairly and impartially render a verdict based solely on the evidence presented and instructions given.

*Johnson*, ¶ 11.

¶13    We have recognized that "it is not uncommon for prospective jurors to come to court with preconceived biases and fixed opinions about a defendant's guilt; information about the case obtained prior to trial; what the law is, requires, or should require; or the veracity of a victim, witness, or type of victim or witness," *Johnson*, ¶ 10, and, thus, "we have held that a prospective juror should be disqualified because of his prejudices only when he has 'formed fixed opinions on the guilt or innocence of the defendant which [he] would not be able to lay aside and render a verdict based solely on evidence presented in court' or, as noted above, 'when a serious question arises about [his] ability to be fair and impartial.'" *Anderson*, ¶ 15 (quoting *State v. Russell*, 2018 MT 26, ¶ 14, 390 Mont. 253, 411 P.3d 1260); *see Golie*, ¶ 10; *Cudd*, ¶ 9. "Whether a prospective juror can do this is a determination that a district court makes based on the totality of the circumstances." *State v. Allen*, 2010 MT 214, ¶ 26, 357 Mont. 495, 241 P.3d 1045.

¶14 For this determination, we have counselled that, "[i]n contrast to single-syllable answers prompted by leading questions, spontaneous and unprompted responses to open-ended questions are generally the most truthful, accurate, and reliable indicators of bias and the ability to be fair and impartial." *Johnson*, ¶ 11 (citing *Russell*, ¶ 14). A court should "give more weight to spontaneous statements than 'coaxed recantations elicited by counsel because spontaneous statements are more likely to be reliable and honest.'" *Russell*, ¶ 14 (citation omitted). When a prospective juror's unprompted answers to open-ended questions raise serious doubt about the juror's ability to be fair and impartial, leading or suggestive questions from counsel or the court may produce unreliable assurances. *See*, *e.g.*, *Russell*, ¶¶ 7, 20 (the State's rehabilitative question "And you believe you can be fair in this case, can't you?" was "improper"); *Allen*, ¶ 28 ("So if [the State doesn't] prove the case are you saying that you're still going to find him guilty?" is a "quintessential coaxed recantation."). Finally, a "court should err on the side of caution and remove a juror if questioning raises serious doubts as to the juror's ability to be fair and impartial." *Anderson*, ¶ 15 (citation omitted).

¶15 We have recognized that a prospective juror's belief that a defendant must testify or prove his innocence can raise a serious question about impartiality, an issue that necessitated reversal in *State v. Braunreiter*, 2008 MT 197, 344 Mont. 59, 185 P.3d 1024. There, a prospective juror spontaneously declared that the charged defendant "has to prove he didn't do it," insisted that "every defendant" needs to "get up there and explain why he has been charged," and repeatedly affirmed that a defendant who exercised his right to

silence "should" testify. *Braunreiter*, ¶¶ 12-13. Even after rehabilitative efforts by the prosecutor and the district court, the prospective juror could say only that he "probably" could follow the judge's instruction, and when pressed again, flatly stated "no" when asked if he could disregard the defendant's silence. *Braunreiter*, ¶¶ 13-15.

¶16 In contrast, M.W. did not offer the kind of fixed opinions expressed in *Braunreiter*, and none of his answers were in response to questions designed to rehabilitate him. Indeed, neither the State nor the District Court made any effort to rehabilitate M.W. or ask any questions.[2] All of M.W.'s statements were made in response to defense counsel's questioning, which, as the State notes, became increasingly leading in nature ("So it's going to depend on the evidence for you?"; "Again, you would prefer to see something from the defense?"), requiring "single-syllable answers." *Johnson*, ¶ 11. It is true that M.W. initially offered a concerning viewpoint about his expectation that the defense would rebut the State's case ("I think its critical that you present rebuttal to the evidence that's been presented"), but his unprompted answers became more nuanced as he went, expanding to explain that the case outcome would depend upon the strength of the evidence, referencing "our promise that he [is] innocent until proven guilty," and leading to defense counsel's acknowledgement that "I think you might be able to find him not guilty without evidence presented on his behalf," before Counsel turned to the leading questions that prompted one-word answers (Q: "But, again, you would prefer to see something from the Defense?" A: "Absolutely."). The weakness of the leading question

---

[2] *See, e.g.*, *Russell*, ¶ 20; *Allen*, ¶ 28; *Braunreiter*, ¶ 14; *State v. Good*, 2002 MT 59, ¶ 48, 309 Mont. 113, 43 P.3d 948.

10

is readily seen, asking for M.W.'s *preference*, and framed in a way that, to answer negatively, would have required M.W. to express a preference *against* "see[ing] something from the Defense." Yet, this is the question and answer that immediately preceded the challenge for cause.

¶17 Certainly, M.W.'s responses did not express a fixed opinion about Haacke's guilt. His initial answers are the kind of common, lay, preconceived notions about criminal cases that we have held do not necessarily disqualify a juror. *See Johnson*, ¶ 10; *State v. Jay*, 2013 MT 79, ¶¶ 18-24, 369 Mont. 332, 298 P.3d 396. The test is not whether a juror can articulate precisely correct legal positions, particularly prior to being instructed on the law, but whether there is "a serious question or doubt about his or her willingness or ability to set aside any such matter to fairly and impartially render a verdict based solely on the evidence presented and instructions given," and for that determination courts must look at the totality of the circumstances. *Johnson*, ¶ 11. The trial court is afforded some discretion to assess a juror's capability to act impartially from their answers and demeanor, which is a broader or more "qualitative" perspective than merely words recorded on a transcript. *Allen*, ¶ 26 ("District courts, able to observe the disposition of prospective jurors, are best placed to make this qualitative determination, for which we grant them a degree of deference."); *State v. Rossbach*, 2024 MT 157, ¶ 36, 417 Mont. 287, 553 P.3d 402 (A district court has "the ability to look into the eyes of the juror in question, and to consider [his] responses in the context of the courtroom.") (internal citation omitted).[3]

---

[3] The Dissent contends that, as here, when a prospective juror expresses a misunderstanding about a legal principle, and "that misunderstanding is not expressly corrected on the record," serious

11

¶18   In our view, the record does not compel the conclusion that "a serious question [arose] about [M.W.'s] ability to be fair and impartial," *Anderson*, ¶ 15, and we are not persuaded the District Court abused its discretion when it sustained the prosecutor's objection and denied this challenge for cause.

¶19   Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

---

doubts about impartiality necessarily arise requiring dismissal for cause. Dissent, ¶ 24. The Dissent appears to suggest that a prospective juror must be dismissed for cause absent an "express retraction" or "express withdrawal" of the problematic view, or "curative commitment to follow the law," Dissent, ¶¶ 24, 27-28, overlooking the reality that such assurances would necessarily be elicited by leading questions from the trial court, prosecutor, or defense counsel, reducing them to "coaxed recantations" rather than reliable indicators of genuine impartiality. *Johnson*, ¶ 12 ("We again strongly caution that coaxed recantations are improper and are merely fodder for appeal at major expense and inconvenience to all.") (internal citation and quotation marks omitted). While the Court certainly shares the commitment to ensuring impartial jurors and fair trials, our precedent rests on an assessment of the totality of a juror's statements, rather than a particular requirement of disavowal or formal retraction. *Allen*, ¶ 26; *accord Jay*, ¶¶ 17-19; *State v. Morales*, 2020 MT 188, ¶¶ 2-6, 400 Mont. 442, 468 P.3d 355. Indeed, the Dissent's observation that M.W. "did not assure the court he would follow its instructions," Dissent, ¶ 23, raises a potential concern about improper rehabilitation had the trial court so inquired of M.W. *See State v. Heath*, 2004 MT 58, ¶ 28, 320 Mont. 211, 89 P.3d 947 (disapproving of trial court questioning that had "shifted the focus from prospective jurors' expressed inability to presume innocence, and coaxed recantations by asking whether they could follow the law and court instructions") (internal citation and quotation marks omitted). M.W.'s initial statements undoubtedly provided defense counsel with legitimate grounds for concern, but as noted, M.W. steadily progressed toward a better understanding during defense counsel's questioning. It was under counsel's more pointed, leading questions, which may have been intended to elicit a disqualifying response, that M.W. affirmed a defendant "is innocent until proven guilty" and that he could acquit if the State's evidence proved marginal, circumstantial, or questionable—even without any evidence from the defendant. Further, the District Court had the benefit of being able to observe M.W.'s tone, physical reactions, and responses firsthand in the full context of the questioning in the courtroom, and is entitled to some deference. *Rossbach*, ¶ 36.

Justice Katherine M. Bidegaray, dissenting.

¶20 Although I agree with the Court's articulation of the governing legal principles, I respectfully dissent. A juror must be excused when the totality of the circumstances raises serious doubt about the juror's ability to act with entire impartiality. *State v. Allen*, 2010 MT 214, ¶ 25, 357 Mont. 495, 241 P.3d 1045; § 46-16-115(2)(j), MCA. We do not require proof of actual bias or a fixed opinion of guilt. Rather, the question is whether the record leaves serious doubt that the juror can set aside any predisposition and follow the court's instructions regarding the presumption of innocence and the State's burden of proof. *State v. Johnson*, 2019 MT 68, ¶ 11, 395 Mont. 169, 437 P.3d 147. I part company with the Court in the application of those principles to this record.

¶21 During voir dire, Prospective Juror 18, M.W., volunteered—without prompting—that "the evidence needs to be rebutted by the Defendant to make it valid" and that "there's only one person in this room who knows beyond any doubt what happened." He further stated that, if the State presented "solid evidence" and he did not hear "a rebuttal of some form," it would be "very difficult" to acquit. These statements were not elicited through leading questions; they were spontaneous responses to open-ended inquiry. They articulate a belief that the defendant bears some obligation to counter the State's evidence to justify acquittal.

¶22 That premise is incompatible with foundational criminal procedure. The presumption of innocence places the entire burden of proof on the State. A defendant has no obligation to testify, present evidence, or rebut the State's case. *See* § 46-16-403, MCA;

13

*Allen*, ¶ 25. A juror who believes that the evidence must be "rebutted by the Defendant to make it valid" expresses a misunderstanding that directly implicates the defendant's right to remain silent and the State's burden of proof beyond a reasonable doubt.

¶23 The juror later acknowledged that a defendant is presumed innocent and suggested he could acquit if the State's evidence was weak or circumstantial. But he never expressly withdrew his earlier assertion that the defendant must rebut the evidence, did not affirm that he would not hold the defendant's silence against him, and did not assure the court he would follow its instructions. No clarifying instruction or follow-up question resolved the tension between Juror 18's spontaneous statements and the governing law. The District Court denied the challenge for cause without further inquiry. The majority's suggestion that further questioning of Juror 18 about his bias "raises a potential concern about improper rehabilitation" does not reflect this record. The court did not attempt to rehabilitate the juror at all.

¶24 Our precedent instructs that spontaneous, unprompted statements are often the most reliable indicators of a juror's state of mind. *Allen*, ¶ 26; *Johnson*, ¶ 11; *State v. Russell*, 2018 MT 26, ¶ 14, 390 Mont. 253, 411 P.3d 1260; *State v. Good*, 2002 MT 59, ¶ 55, 309 Mont. 113, 43 P.3d 948. When such statements reveal a misunderstanding that shifts the burden to the defendant, and that misunderstanding is not expressly corrected on the record, such statements raise serious doubt that the juror could act with "entire impartiality" as required by § 46-16-115(2)(j), MCA. Serious questions about a prospective juror's ability to be fair and to remain impartial require resolution "in favor of excusing the juror."

14

*State v. Braunreiter*, 2008 MT 197, ¶ 10, 344 Mont. 59, 186 P.3d 1024.  A juror who expects rebuttal from the defendant before acquittal is justified cannot be said to approach the case with entire impartiality toward the defendant's constitutional right to silence.

¶25    The majority characterizes Juror 18's statements as reflecting only a "preference" to hear from the defense and emphasizes that defense counsel's later questions were leading.  That framing does not account for the juror's initial, unsolicited articulation of the governing premise.  Juror 18 stated—before any leading questions—that the evidence "needs to be rebutted by the Defendant to make it valid" and that it was "critical" to present rebuttal if the State's evidence were strong.  Those statements were not responses to suggestive questioning; they were spontaneous expressions of how the juror believed the trial process should operate.  A belief that the State's evidence is not "valid" unless rebutted by the defendant reflects a burden-shifting premise that is incompatible with the presumption of innocence.  Later acknowledgments that the defendant is presumed innocent do not expressly withdraw that premise, and the record contains no unequivocal commitment that Juror 18 would not hold the defendant's silence against him.

¶26    In *Braunreiter*, ¶¶ 10-17, 25, we held that a district court abused its discretion by denying a challenge for cause where a prospective juror expressed a belief that the defendant bore some obligation to prove his innocence.  Notably, although the juror in *Braunreiter* gave generalized assurances that he would follow the court's instructions, we nevertheless concluded that the juror's earlier burden-shifting statements created serious doubt about his impartiality and required excusal for cause.

15

¶27    The same principle governs here.  Juror 18 articulated a belief that the State's evidence "needs to be rebutted by the Defendant to make it valid" and that acquittal would be difficult without such rebuttal if the State's case were strong.  Unlike in *Braunreiter*, Juror 18 made no unequivocal withdrawal of that premise or curative commitment that he would follow the court's instructions.  If generalized assurances did not cure serious doubt in *Braunreiter*, the absence of any express retraction cannot cure it here.  Under our precedent, such unretracted burden-shifting statements require excusal for cause.

¶28    The majority also emphasizes the District Court's superior position to observe Juror 18's demeanor and tone.  Certainly, we afford deference to a trial court's qualitative assessment of juror credibility.  *Allen*, ¶ 26.[1]  But deference does not displace the statutory mandate.  When a juror's unretracted statements reveal a burden-shifting premise, and the record contains no express withdrawal or curative commitment to follow the law, the question is not one of demeanor but of legal sufficiency under § 46-16-115(2)(j), MCA.  Our precedent instructs that serious doubts about impartiality must be resolved in favor of excusal.  *Braunreiter*, ¶ 10.  Deference cannot cure a legal inconsistency that appears on the face of the transcript.

---

[1] District courts, able to observe the disposition of prospective jurors, are best placed to make this qualitative determination, for which we grant them a degree of deference. *State v. Hart*, 2009 MT 268, ¶ 13, 352 Mont. 92, 214 P.3d 1273.  To guide district courts in evaluating possible impartiality, we have observed that a prospective juror's spontaneous and unprompted statements are the most meaningful.  A district court or litigant may ask open-ended questions to allow a venire member to clarify initial, suspect statements and thereby allay concerns about impartiality. State v. *Robinson*, 2008 MT 34, ¶ 11, 341 Mont. 300, 177 P.3d 488, *overruled in part on other grounds by State v. Gunderson*, 2010 MT 166, ¶ 50, 357 Mont. 142, 237 P.3d 74.  Conversely, "coaxed recantations" in response to leading questions by counsel "fail to demonstrate" the impartiality required of jurors. *Braunreiter*, ¶ 11; *Allen*, ¶ 26.

¶29 Under *Allen*, we do not ask whether actual bias has been proven. We ask whether serious doubt exists. On this record, serious doubt remains unresolved. The statutory command required excusal for cause. Because the District Court denied the challenge and Haacke exercised a peremptory strike to remove Juror 18 and ultimately exhausted his peremptory challenges. Under *Good*, ¶¶ 62-63, and reaffirmed in *State v. Ghostbear*, 2020 MT 60, ¶¶ 8, 13-16, 399 Mont. 208, 459 P.3d 1285, the erroneous denial of a challenge for cause that forces a defendant to exhaust peremptory challenges is structural error requiring reversal. The remedy does not depend upon a showing of prejudice; it follows from the deprivation of the right to an impartial jury. The right to trial by an impartial jury, and the presumption of innocence that accompanies it, are structural protections that define our criminal justice system. When the record reveals unresolved serious doubt about a juror's ability to honor those principles, our precedent requires excusal.

¶30 I would reverse and remand for a new trial before an impartial jury. For these reasons, I respectfully dissent.

/S/ KATHERINE M. BIDEGARAY

Justices Ingrid Gustafson and Laurie McKinnon join in the dissenting Opinion of Justice Katherine M. Bidegaray.

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON